[Civ. No. 21824. First Dist., Div. One. April 20, 1964]

ROBERT G. HARLEY, Petitioner, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; DOLORES HARLEY, Real Party in Interest.

Bissell, Bible and Corey and William H. Bissell for Petitioner.

No appearance for Respondent.

E. C. Mahoney for Real Party in Interest.

BRAY, P. J.—Petition for writ of prohibition commanding the Superior Court of San Mateo County to desist from proceeding further in certain contempt proceedings arising from petitioner's failure to comply with an order for the support of real party in interest.

## QUESTION PRESENTED.

May a California divorce decree awarding alimony be collaterally attacked by a prior Nevada judgment of divorce and child custody?

## RECORD.

Dolores Harley, real party in interest, hereinafter referred to as plaintiff, and petitioner Robert G. Harley were wife and husband. They have one minor child. On October 18, 1962, plaintiff filed an action in the San Mateo County Superior Court against petitioner for divorce, for custody of the minor child and support therefor. Petitioner answered and cross-complained for divorce. Plaintiff answered the cross-complaint. Thereafter petitioner filed an action in the State of Nevada against plaintiff for divorce. Plaintiff answered therein setting up, *inter alia*, the pendency of the California action. On July 5, 1963, a final divorce decree was entered in the Nevada action. That decree awarded petitioner a divorce but awarded custody of the child to plaintiff, and ordered petitioner to pay plaintiff $100 per month for the support of said child. It provided no support for the wife. On July 2, 1963, after notice of trial had been given the husband, and his attorney being present and participating, trial was had in the California action. The court that day announced its decision and entered a minute order granting plaintiff a divorce, custody of the child, alimony and child support.[1] However, it was not until July 17 (approximately 12 days after the entry of the Nevada divorce decree) that an interlocutory divorce decree was entered in the California action. It granted plaintiff a divorce and custody of the child and ordered petitioner to pay plaintiff "arrearage of $775 in support," $210 per month for plaintiff's support and $100 per month for support of the child, also certain attorney's fees. No mention of

---

[1]No contention is made that petitioner did not have proper notice of the trial.

the Nevada divorce decree appeared in the California action up to this point.

Thereafter, because of petitioner's failure to comply with the support order in the California decree, an order to show cause *re* contempt issued out of the San Mateo County Superior Court was served upon petitioner. On the hearing of that order, petitioner moved to quash it on the grounds that the interlocutory decree was void and the court had no jurisdiction to enter or proceed to enforce it, because of the prior entry of the Nevada decree. The motion to quash was denied and a further hearing upon the order to show cause has been set.

## THE EFFECT OF THE NEVADA DECREE.

▮▮▮ In denying the motion to quash the order to show cause the trial court held that, while it could not set aside the Nevada decree, it could, under the rules of comity, ignore it. This the court did.

The court erroneously based its decision on *Grey* v. *Independent Order of Foresters* (Mo., 1917) 196 S.W. 778. This case is not applicable for the reason that it is well established in California that full faith and credit *must* be given to judgments of a sister state. In *Heuer* v. *Heuer* (1949) 33 Cal.2d 268 [201 P.2d 385], the court referred to *Sherrer* v. *Sherrer* (1948) 334 U.S. 343 [68 S. Ct. 1087, 92 L. Ed. 1429, 1 A.L.R.2d 1355] in which case the wife went from Massachusetts to Florida and sued for divorce. The husband appeared personally and by counsel. The wife was granted a divorce. She received custody of the minor children pursuant to the parties' stipulation read into the record. The husband returned to Massachusetts and sought a judicial declaration that the divorce and subsequent remarriage of the wife was invalid. A decree in his favor was affirmed by the Supreme Judicial Court of Massachusetts. The court in *Heuer* also referred to *Coe* v. *Coe* (1948) 334 U.S. 378 [68 S. Ct. 1094, 92 L. Ed. 1451, 1 A.L.R.2d 1376], where the wife obtained an award of support in a Massachusetts court. The husband journeyed to Nevada and there instituted divorce proceedings. The wife went to Nevada to contest the husband's action and to obtain a divorce for herself. Her answer admitted the allegations as to the husband's residence. Both parties were present personally and by counsel. The wife was granted a divorce. She returned to Massachusetts and brought contempt proceedings against the husband for failure to comply with the prior Massachusetts support order. A

contempt order based on a holding of the invalidity of the Nevada decree was affirmed on appeal.

Concerning these two cases the court in *Heuer* stated: "The Supreme Court reversed in each case. The reversals resolved the main issue in the present case on a declaration that 'the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree.' (*Sherrer* v. *Sherrer, supra,* at p. 351, 68 S. Ct. at p. 1091, 92 L.Ed. at p. 1436.) ... Therefore where, as here, the finding of the requisite jurisdictional facts was made in divorce proceedings in another state in which the defendant appeared and participated, and the decree has become final, it must be given full faith and credit in the courts of this state." (P. 271; see also *Barber* v. *Barber* (1958) 51 Cal.2d 244, 247 [331 P.2d 628].)

Volume 2 Freeman on Judgments, section 719, page 1519, states: "Where two actions involving the same issue or issues, between the same parties or their privies, are pending at the same time, so that a final judgment in one would be res judicata or a bar in the other, when the judgment in one becomes final it may be urged in the other by appropriate proceedings, regardless of which action was begun first. It is the first final judgment, although it may be in the second suit, that renders the matter res judicata in the other suit."

However, in our case, if the ruling by the trial court in the Nevada decree could not affect the enforcement of the California support order is correct on any ground, the fact that the court gave a wrong reason for the order is immaterial. As said in *Southall* v. *Security Title Ins. etc. Co.* (1952) 112 Cal.App.2d 321, 323 [246 P.2d 74], it is the validity of the court's action which is reviewable "and not the court's opinion or statement of reasons for its action." (See also *Moxley* v. *Title Ins. & Trust Co.* (1946) 27 Cal.2d 457, 462 [165 P.2d 15, 163 A.L.R. 838]; 3 Witkin, Cal.Procedure, § 76, p. 2234.)

The real question here is whether petitioner can attack the support order in this proceeding by using the Nevada decree. Here we have an attempt to impeach the California judgment in a proceeding other than that in which the decree was rendered; hence it is a *collateral* attack.

 Petitioner having notice of the time of trial of the California action in which he appeared, and having appeared at the trial by his counsel who, among other actions, presented witnesses in his behalf, by his failure to assert the bar of the prior Nevada judgment, which judgment would have been res judicata of this action, has waived his right to assert that bar. As said in *Clark* v. *Lesher* (1951) 106 Cal.App.2d 403, 410 [235 P.2d 71]: "Whether or not an action is barred by a prior judgment and whether or not issues tendered in an action are subject to the plea of res judicata in estoppel are matters of defense, generally regarded as affirmative, and such as must be presented either by pleading or evidence by the one relying on it. (*Rideaux* v. *Torgrimson*, 12 Cal.2d 633, 638 [86 P.2d 826].)"

In *Hogan* v. *Superior Court* (1925) 74 Cal.App. 704 [241 P. 584], the petitioner sought a writ of prohibition to prohibit the enforcement of a money judgment against him obtained by the administrator of an estate on the ground that said judgment was void, because after the action had been commenced and before judgment the estate was closed and the administrator discharged, and that therefore the action was without a plaintiff at the time it was tried and judgment rendered. The court held that none of these facts appeared on the judgment or on the judgment roll. The court stated at pages 708-709: "A proceeding of this nature, to prohibit the enforcement of a judgment, constitutes a collateral attack upon that judgment (*Wiggin* v. *Superior Court*, 68 Cal. 398 [9 P. 646]; *Frey* v. *Superior Court*, 22 Cal.App. 421 [134 P. 733]), and being a collateral attack 'the judgment must be held to be valid unless the record thereof, the judgment-roll, shows it to be void—unless, as the authorities put it, it is void upon its face. In determining the question, we are restricted to the evidence afforded by the judgment-roll' (*Crouch* v. *H. L. Miller Co.*, 169 Cal. 341 [146 P. 880]). Every presumption and intendment is in favor of the validity of the judgment, and any condition of facts consistent with the validity of the judgment will be presumed to have existed, rather than one which will defeat it (*Canadian etc. Co.* v. *Clarita etc. Co.*, 140 Cal. 672 [74 P. 301], and cases cited therein). In other words, to be attackable collaterally for lack of jurisdiction the judgment must be void on its face, and it is not void on its face unless the record affirmatively shows that the court was without jurisdiction to render the judgment [citations]. The record is the judgment-roll and upon collateral attack is the only evidence that can be

considered in determining the question of jurisdiction. Extrinsic evidence is wholly inadmissible, even though it might show that jurisdiction did not in fact exist [citations]. The true rule is not whether jurisdiction has been legally exercised, but whether it was obtained at all. Once the trial court has obtained jurisdiction of both the *res* and the parties its subsequent proceedings cannot be collaterally attacked, unless it be ascertained from the judgment-roll that jurisdiction was thereafter lost (*In the Matter of Hughes,* 159 Cal. 360 [133 P. 684]; *Baldwin* v. *Morgan,* 50 Cal. 585).''

In *Lieberman* v. *Superior Court* (1925) 72 Cal.App. 18 [236 P. 570], the court stated: ''It is the undoubted rule that the validity of an order or judgment of a court of superior jurisdiction cannot be assailed by collateral attack on the ground that it was made in excess of jurisdiction, unless the lack of jurisdiction appears on the face of the record. To put the rule differently, the jurisdiction will be deemed to exist in the face of such an attack unless the record affirmatively shows that the tribunal had not jurisdiction to make the order or to render the judgment in question. This rule is so well established and is so universally understood that we do not scruple to state it without citation of authority.'' (P. 29.) (See *Estate of Smead* (1938) 12 Cal.2d 20 [82 P.2d 182]; *Kaufmann* v. *California Mining etc. Syndicate (*1940) 16 Cal.2d 90 [104 P.2d 1038]; *Estate of Keet* (1940) 15 Cal.2d 328 [100 P.2d 1045]; *Wells Fargo & Co.* v. *City & County of San Francisco* (1944) 25 Cal.2d 37 [152 P.2d 625]; *Salter* v. *Ulrich* (1943) 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344].)

Petitioner contends that *In re Brown* (1949) 90 Cal. App.2d 651 [203 P.2d 799], establishes a different rule to that hereinabove mentioned and holds that on a collateral attack a judgment can be shown to be void although it appears on its face and on the judgment roll to be valid. However, an examination of that case does not support petitioner's contention. *Brown* was a habeas corpus proceeding to determine conflicting claims of divorced parents to the custody of a minor child. On March 2, 1948, the father of the child filed suit for divorce in Los Angeles County. The mother who had gone to Nevada to obtain residence to bring action for divorce in that state was there served with summons and complaint in the California action on March 3. She defaulted. On March 5, she sued for divorce in Nevada. The father was served with summons and complaint in Nevada

the same day. He defaulted. On April 9 the mother, in the Nevada action, obtained judgment of divorce and custody of the minor child. On April 30 the father in the Los Angeles superior court obtained a decree of divorce and custody of the child. In May, the mother brought the child into California and the father, acting under the California decree, took the child into his custody. Thereafter the mother brought the habeas corpus proceeding. The court stated, ''We shall consider only the question whether respondent has succeeded in proving that petitioner [the mother] did not establish a bona fide residence in Nevada.'' The opinion states at page 652 that the ''facts were established, either by uncontroverted allegations of the verified pleadings or by stipulation of the parties at the hearing. ...'' It is evident that the question of the right to collaterally attack the California decree by using the Nevada judgment was not raised.[2] The court found that the mother was a bone fide resident of Nevada at the time of bringing the action there. It then held, in effect, that as the Nevada court had dissolved the marriage between the parties and granted custody of the child to the mother, the California court thereafter was ''not competent to dissolve a marital relation that no longer existed,'' (p. 654) nor grant custody of the child as ''a mere incident to the main relief granted'' (p. 654). It held the California decree to be a nullity. No consideration was given by the court to the rule, well established by the cases hereinbefore cited, that a judgment not void on its face may not be collaterally attacked. The parties and both the trial and appellate courts assumed that the California decree could be collaterally attacked. The decision is based upon that assumption.

Although petitioner could have pleaded the bar of the Nevada judgment in this action at any time before judgment and it would have been effective as a res judicata bar to the action, petitioner did not do so, even though he had appeared in the action.

It is not contended, nor could it be, that there is anything relating to the Nevada decree in the judgment roll or in the

2It is interesting to note the following concerning the evidence purporting to show that the mother was not a bona fide resident of Nevada at the time she filed suit there. ''No objection was made by petitioner to the receipt of these matters in evidence upon the ground that the Nevada decree was not subject to collateral attack, and we do not decide that question,'' (p. 653) nor was any objection made to what was actually a collateral attack on the California judgment.

proceedings prior to judgment, nor that the judgment is void on its face. Hence the California decree is valid and the order for support contained therein may be enforced.

The alternative writ of prohibition is discharged and the petition is denied.

Sullivan, J., and Molinari, J., concurred.