[No. B102410. Second Dist., Div. Four. Sept. 24, 1996.]

ELVA ZARAGOZA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERTO ZARAGOZA, Real Party in Interest.

**COUNSEL**

Jeffrey W. Doeringer for Petitioner.

No appearance for Respondent.

Dorothy L. Carfrae for Real Party in Interest.

**OPINION**

**HASTINGS, J.**—In this writ proceeding we conclude that the failure to timely file a motion to quash pursuant to California Rules of Court, rule

1230(a)(2), results in a waiver of the right to assert a prior Nevada judgment of dissolution as res judicata in the present action for dissolution of marriage.

## STATEMENT OF THE CASE

In December 1993, Elva Zaragoza (Elva) filed a petition for dissolution of marriage and alleged she had been a resident of the State of California for six months and of the County of Los Angeles for three months; she had been married to Roberto Zaragoza (Roberto) since June 12, 1977; and they had separated in October 1993. She sought an order of joint custody of the party's two minor children, requested that property rights be determined, and sought to terminate the court's jurisdiction to award spousal support to Roberto.

On January 11, 1994, Roberto filed a response and "request for dissolution of marriage." Consistent with Elva, he also alleged he had been a resident of the State of California for six months and a resident of the County of Los Angeles for three months. He also alleged the parties had been married on June 12, 1977, and had separated in October 1993. He requested joint custody of the children; that the court terminate its jurisdiction to award spousal support to Elva; and that the court determine the property rights of the parties.

For the next two years the parties participated in discovery, applications for orders to show cause and a settlement conference.

Trial commenced on October 23, 1995. On October 25, 1995, during cross-examination of Elva, counsel for Roberto inquired about a trip to Nevada in 1985. Counsel for Elva objected: "I'm going to object as to the relevance of this, Your Honor." The court asked counsel for Roberto the relevance of the question and counsel stated: "Your Honor, I was not the attorney that started this action. And I have found, yesterday, that the parties were divorced in Nevada in 1985. I have a certified copy of the decree of divorce, an absolute divorce." Upon further inquiry, Elva admitted that the copy of the decree proffered by counsel was in fact a divorce that the two parties had obtained in Nevada. Upon further examination, Elva admitted that she had not "remarried [Roberto] through a ceremony and a license . . . after 1985."

Counsel for Roberto moved the Nevada judgment into evidence and argued that if there was a valid divorce in Nevada then the current proceeding could not go forward. He asked that the current action be dismissed for

lack of jurisdiction. The following exchange took place: "THE COURT: Your client is a master of the restaurant business and has accumulated a great deal of wealth through his ability to be a business person, and he didn't tell you [counsel]? [¶] This is the first time that this topic has come up? [¶] MR. CLARK [counsel for Roberto]: No, [Roberto] told his previous attorney. [¶] . . . [¶] And it was in the papers that were given to me—I have a banker['s] box of old odds and ends that were not deemed important or relevant."

Counsel for Elva objected to the proffered evidence and requested time to review the evidence and the law. The hearing was continued to October 30, 1995, for further settlement negotiations.

On October 30, the court was advised that the matter had not been settled. Counsel for Roberto made an oral motion to dismiss which the court refused to entertain, ordering that counsel should file a noticed motion to dismiss.

On November 30, 1995, counsel for Elva filed a motion seeking to resume trial of the matter. His declaration advised the court that a full settlement agreement had been reached by the parties on October 25; Roberto's counsel had drafted the judgment; the parties and counsel were to appear in court on November 1, 1995, to have the matter concluded; counsel for Roberto advised the court on that date that Roberto had disavowed the settlement the weekend before the appearance; and finally, that counsel for Roberto had not filed any motions to establish the Nevada decree, as ordered by the court. Elva also filed a declaration in support of the motion which stated as follows: "I declare that the Respondent, Roberto Zaragoza and I did travel to the State of Nevada to obtain a dissolution of marriage. At that time, and to the present, we were and remain residents of the State of California. We thought at the time that the dissolution decree was a solution to an immigration matter we were involved in. Until the separation due to the present dissolution matter, the Respondent and I continued to maintain a residence together here in the State of California, and together we continued to purchase and operate our businesses here in the State of California. At no time did we maintain a residence in the State of Nevada."

The motion to resume trial was heard on January 16, 1996, and new counsel appeared for Roberto. The court made the following order: "1. [Roberto's] counsel shall file and serve a Complaint to Establish Sister State Judgment concerning the Decree of Divorce filed May 7, 1985 in . . . Nevada. . . . Counsel for [Elva] may file an appropriate motion attacking the validity of said Decree. [¶] 2. In the event the validity of the Nevada decree is upheld, the marital property and debts issues shall be deemed to be reserved issues. [¶] 3. [Elva's] counsel shall file and serve a civil action

concerning non-marital property/debt issues. The civil action, the sister state judgment action and the within action shall all be consolidated for hearing/ trial." The matter was continued to February 22, 1996, for review.

Counsel for Roberto complied with the order and on February 8, 1996, filed a complaint to establish the Nevada decree. Elva filed an answer. On May 8, 1996, the court heard the matter and entered the following order: "Court finds that both parties participated in the Nevada dissolution action and finds full faith and credit has been established. . . . [¶] Court finds it has no jurisdiction as to property and debt issues. . . . [¶] Court vacates all others, except child custody orders [in the Nevada judgment, which orders] are ordered transferred and incorporated into the judgment in [this] case. . . ."

On May 29, 1996, Elva filed with this court a petition for "writ of mandate, prohibition or related relief . . ." seeking to vacate the orders of May 8, 1996, on the basis that Roberto failed to comply with California Rules of Court, rule 1230, thereby waiving his right to rely upon the Nevada decree. On June 24, 1996, we issued an order to show cause "why a peremptory writ of mandate should not issue ordering [the trial court] to vacate the order of May 8, 1996. . . ." We did not issue a stay order.

## DISCUSSION

California Rules of Court, rule 1230 (rule 1230), as pertinent, provides: "(a) Within the time permitted to file a response, the respondent may move to quash the proceeding, in whole or in part, for any of the following: [¶] . . . [¶] (2) That there is a prior judgment or another action pending between the same parties for the same cause. [¶] . . . [¶] *A party waives the matters set forth above if they are not raised by filing a motion to quash pursuant to this rule within the time permitted to file a response.*" (Italics added.)

Roberto challenges application of rule 1230 on the basis that a valid marriage is a jurisdictional foundation for a dissolution proceeding and that lack of jurisdiction can be raised at any time in the proceeding. He relies upon the full faith and credit clause of the United States Constitution, article IV, section 1. He argues that with proof of the valid divorce in Nevada there is no marriage to dissolve. As a fallback position, he urges that petitioner should be estopped from challenging the Nevada decree because she willingly took part in that action.

We have found no case construing the effect of rule 1230(a)(2).

"Dissolution is an in rem proceeding, in which marriage is the res that is adjudicated. [Citation.]" (*In re Marriage of Zierenberg* (1992) 11 Cal.App.4th

1436, 1444 [16 Cal.Rptr.2d 238].) In *Zierenberg*, we vacated a California judgment of dissolution of marriage because the parties had previously been divorced in Puerto Rico: "Thus, at the time of the California decree, the res of marriage no longer existed; there was nothing to dissolve." (*Id.* at p. 1445.) However, waiver pursuant to rule 1230 was not an issue in that case. In the petition filed in California, petitioner disclosed that she was party to another dissolution action pending in Puerto Rico. (11 Cal.App.4th at p. 1440.)

In this case, we are not dealing with the concept of subject matter jurisdiction which ". . . refers to a court's authority, i.e., competency, to adjudicate the type of controversy involved." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 5, p. 371.) Pursuant to section 200 of the Family Code: "The superior court has jurisdiction in proceedings under this code."[1] Pursuant to section 2010, "the court has jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning the following: [¶] (a) The status of the marriage. . . ."

The concept of "res" as jurisdictional is tied to the concept of personal jurisdiction: "A divorce action is said to be 'in rem' to the extent that it establishes the matrimonial status of the parties. (*Estate of Lee* [(1927)] 200 Cal. 310, 314 [253 P. 145].) The res which is the subject of adjudication is an intangible. Jurisdiction is exercised not by taking custody of a tangible article, *but by serving process* (in person or by publication) upon the other spouse." (*Mungia* v. *Superior Court* (1964) 225 Cal.App.2d 280, 284 [37 Cal.Rptr. 285], italics added.) Thus, jurisdiction is asserted by valid service of process on the other spouse.

A party may waive the defect of proper service by making a general appearance in an action without challenging jurisdiction. (Code Civ. Proc., § 410.50, subd. (a); *Mansour* v. *Superior Court* (1995) 38 Cal.App.4th 1750, 1756 [46 Cal.Rptr.2d 191].) There is no reason that challenge to the existence of the "res" cannot also be waived, as provided for in rule 1230.

In *Harley* v. *Superior Court* (1964) 226 Cal.App.2d 432 [38 Cal.Rptr. 72], both parties had participated in a divorce proceeding in Nevada and a final

---

[1] Unless otherwise noted all further statutory references are to the Family Code, enacted effective January 1, 1994 (29C West's Ann. Fam. Code (1994 ed.), p. 1.) The code applies to actions which were filed prior to its effective date: "If a document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law; but subsequent proceedings taken after the operative date concerning the document or paper, . . . or other matter relating thereto is governed by the new law and not by the old law." (§ 4, subd. (d).) The only act in this proceeding which precedes the effective date of the code was filing of the petition. Thus, we review this matter pursuant to the Family Code.

judgment had been rendered. The parties also participated in a divorce action in California but neither party brought the Nevada decree to the attention of the court until an attempt was made to enforce a provision of the California decree. The Court of Appeal concluded that a waiver had resulted from failure to raise the Nevada decree timely. "The real question here is whether petitioner can attack the support order in this proceeding by using the Nevada decree. Here we have an attempt to impeach the California judgment in a proceeding other than that in which the decree was rendered; hence it is a *collateral* attack. [¶] Petitioner having notice of the time of trial of the California action in which he appeared, and having appeared at the trial by his counsel who, among other actions, presented witnesses in his behalf, by his failure to assert the bar of the prior Nevada judgment, which judgment would have been res judicata of this action, has waived his right to assert that bar." (*Id.* at pp. 435-436.)

Section 210 provides as follows: "Except to the extent that any other statute or rules adopted by the Judicial Council provide applicable rules, the rules of practice and procedure applicable to civil actions generally apply to, and constitute the rules of practice and procedure in, proceedings under this code."

Section 211 provides as follows: "Notwithstanding any other provision of law, the Judicial Council may provide by rule for the practice and procedure in proceedings under this code."

Code of Civil Procedure section 1908.5 provides: "When a judgment or order of a court is conclusive, the judgment or order *must be alleged in the pleadings if there be an opportunity to do so*; if there be no such opportunity, the judgment or order may be used as evidence." (Italics added.)

Rule 1230 is a rule promulgated by the Judicial Council pursuant to the authority of section 211. It requires that a party timely assert a prior judgment as a bar to the proceeding or waive the issue. This is consistent with the concept of waiver relating to personal jurisdiction, the obligation to raise the issue of a prior judgment in a timely manner as required in Code of Civil Procedure section 1908.5, and the holding in *Harley* v. *Superior Court, supra*, 226 Cal.App.2d 432.

Roberto did not file a motion to quash alleging the prior Nevada decree within the time permitted to file his response. Instead, Roberto filed a response in which he admitted all of the jurisdictional elements necessary for the court to exercise jurisdiction. Therefore, pursuant to rule 1230, Roberto waived the right to assert the prior decree as a defense to the action. Nor do

the facts establish an estoppel to prevent Elva from challenging use of the Nevada decree. Thus, the court erred by admitting evidence of the Nevada decree for the purpose of defeating jurisdiction.

## DISPOSITION

Let a writ of mandate issue ordering the trial court to set aside its order of May 8, 1996, and any judgment entered thereafter, and to proceed with trial of this action.

Vogel (C. S.), P. J., and Baron, J., concurred.