[No. B005978. Second Dist., Div. Four. Apr. 23, 1985.]

RICHARD A. EDDY, Plaintiff and Respondent, v.
WILLIAM H. TEMKIN, JR., et al., Defendants and Appellants.

**COUNSEL**

Louis H. Bernstein for Defendants and Appellants.

Gronemeier & Barker, Dale L. Gronemeier and Ira S. Rubin for Plaintiff and Respondent.

## Opinion

**ARGUELLES, J.**—Defendants and appellants William H. Temkin, Jr. (William, Jr.), and Normandie Towers, Ltd., (Normandie Towers), appeal from an order charging the partnership interest (Corp. Code, § 15028) of William Nemour in the Normandie Towers partnership with the unsatisfied amount of a judgment against Nemour and in favor of plaintiff Richard Eddy in the sum of $303,740.92.

### Facts

On June 16, 1981, Eddy filed a petition for charging order with the Los Angeles Superior Court, alleging that on May 20, 1981, judgment was entered in San Diego County in favor of Eddy and against Nemour and other defendants; that this judgment was recorded in Los Angeles County, and remained unsatisfied; and that William, Jr., William, Sr., Ida, and Sheldon Temkin, and Nemour, were partners in Normandie Towers. Eddy requested the court to charge Nemour's interest in the partnership with the unsatisfied judgment.

Eddy's petition incorporated a certificate of limited partnership, recorded August 3, 1977, showing Nemour as a general partner entitled to $300,000 from Normandie Towers, a partnership formed to build and manage a senior citizens' project, and an amended certificate, recorded September 1, 1978, showing that Nemour had become a limited partner in Normandie Towers, but was still entitled to $300,000.

An order to show cause issued on Eddy's petition. No opposition was filed. However, on July 28, 1981, at the order to show cause hearing, William, Jr., presented his written, but unfiled, opposition to the charging order, alleging that Nemour had no interest in the partnership, and, in his declaration, stating that Nemour once had been a limited partner entitled to receive $300,000 at the time of distribution of the partnership, but that, "[s]ince September 1, 1978, as the building delay worsened," William, Jr., had bought out Nemour, and that by February 15, 1981, he had paid Nemour over $300,000. William, Jr., alleged that he had received an assignment of Nemour's partnership interest; and that on June 16, 1981, an amended certificate of limited partnership had been filed showing Nemour no longer had an interest in the partnership.

William, Jr., requested the court to hold a plenary hearing on the order to show cause.

The hearing was continued to permit discovery. Pending the continued hearing, Eddy conducted a number of depositions, and engaged in other discovery, but appellants made no efforts to conduct discovery.

On October 14, 1981, Eddy filed additional declarations, supported with references to depositions and documents obtained through discovery, in support of the charging order. He alleged on the basis of the discovered material that the certificate of limited partnership showing that Nemour had withdrawn, which was recorded on June 16, 1981, the same day that the petition for charging order was filed, was a sham and an attempt to defraud Nemour's creditors.

The supplemental papers in support of the charging order set forth the following: Until June 16, 1981, the date on which the petition for charging order was filed, and the new partnership certificate showing Nemour's purported withdrawal was filed, the partnership documents had shown Nemour as a partner. Appellants claimed, in response to discovery, that the amended partnership agreement had been executed on February 2, 1981. The agreement itself stated that it was executed "as of February 2, 1981," rather than "on" that date. Moreover, even on February 2, 1981, Nemour and William, Jr., both knew of Eddy's action against Nemour; trial of that action was originally scheduled for October 1980, and was continued to March 1981.

In response to discovery, appellants produced a copy of a letter, dated February 2, 1981, addressed to William, Jr., and signed by Nemour, in which Nemour "acknowledged" advances in the amount of $307,577.53 made to him by Normandie Towers, drawn from a bank account which Normandie Towers shared with a related partnership, Sunset-Normandie Towers, Ltd. Nemour claimed that in exchange for cancellation of the obligation to repay these advances, he released his limited partnership interest to William, Jr.

Appellants also produced an unsigned copy of a letter, dated December 12, 1980, from William, Jr., to Ida, William, Sr., and Sheldon, in which William, Jr., sought the consent of the addressees to accepting a transfer of Nemour's interest in exchange for cancelling the advances.

The amended certificate of partnership was notarized by Norman W. Cohen, whose jurat stated that William, Jr., and the other Temkins, and Nemour, had personally appeared before him and signed the agreement on February 2, 1981. The jurat also stated that William, Sr., and Ida had appeared through Robert G. Leff, their attorney in fact.

When a process server attempted to locate Cohen on August 26, 1981, to deliver a request to produce the notarial journal for February 2, 1981, he was told to see a man who was coming out of an office. That man told the process server to see Mr. Cohen's secretary in another office, who said that

Cohen was out of town and she did not know when he would return. As the process server was leaving, the secretary approached him and asked if she could see the papers. The process server said the papers were for Cohen only, and left.

By letter of August 28, 1981, Eddy's attorney then requested copies of the items in Cohen's public notarial journal for the February 1981 amended certificate of partnership, pursuant to Government Code section 8106, which provides for such requests. The journal was not produced, and appellants later claimed it was lost.

Cohen was a social and business acquaintance of Nemour and all the Temkins.

William, Jr., admitted that as of June 16, 1981, when the amended partnership certificate was recorded, he was aware that a judgment against Nemour in the San Diego action would "create some strong interest in Normandie Towers."

Nemour's attorney, Robert G. Leff, submitted a declaration in opposition to the petition for charging order. He stated that Nemour withdrew his $300,000, and was repaid for a loan of $100,000, and in December 1980, Leff told William, Jr., that he should have Nemour assign his interest either to the partnership or to William, Jr. He also maintained that FHA/HUD approval was not required for Nemour to withdraw, despite certain language in the partnership agreement to that effect.

The attorney admitted, however, that if Nemour had not received $300,000, then a charging order would be proper.

The court granted the petition for charging order, and made findings, which were as follows: Nemour originally was a general partner of Normandie Towers, but, in 1978, he became a limited partner, entitled to $300,000 out of the first $600,000 of receipts. Normandie Towers was a general partner in Sunset-Normandie, Ltd., which opened a bank account for use by Normandie Towers and Sunset-Normandie, with Nemour and William, Jr., as signatories. From 1978 through at least March 1981, checks totalling $360,677.53 were written to Nemour from that account. Nemour returned at least $209,500 of that amount. William, Jr., did not pay Nemour any of his personal funds for Nemour's interest in Normandie Towers. Robert G. Leff was Nemour's attorney in the charging order proceeding and the San Diego action. He was also counsel for Normandie Towers, a creditor of Normandie Towers, and a former law partner of William, Jr. Leff and Nemour kept William, Jr., informed of the progress of the San Diego

action. In May 1981, Leff informed William, Jr., of the judgment against Nemour. On June 16, 1981, the amended certificate purporting to show the withdrawal of Nemour as a partner was filed. The amended certificate purported to have been signed and notarized on February 2, 1981, but, in fact, was prepared later to conceal Nemour's interest. Although the certificate purported to be notarized on February 2, 1981, the signers of the certificate actually never signed a notarial journal in connection with their notarized signatures. Further, the purported buy out of Nemour did not occur in accordance with certain valuation and first refusal procedures set forth in the partnership agreement.

On the basis of these facts, the court concluded that Nemour was still a partner in Normandie Towers, and that the amended certificate of partnership had been prepared to defraud creditors.

## CONTENTIONS

Appellants contend that: (1) The court committed prejudicial error in denying their request for a plenary hearing at which oral testimony could be taken on the order to show cause why the charging order should not issue; and (2) issuance of the charging order was not supported by substantial evidence.

## DISCUSSION

### I. *Denial of Plenary Hearing*

Code of Civil Procedure section 2009 provides that: "An affidavit may be used . . . upon a motion, . . ."

"Section 2009 is construed as empowering the trial court to determine motions upon declarations alone and to allow the court discretion to refuse oral testimony. (*Beckett* v. *Kaynor Mfg. Co., Inc.* [1958] 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749]; [citations]." (*Reifler* v. *Superior Court* (1974) 39 Cal.App.3d 479, 483 [114 Cal.Rptr. 356].)

Code of Civil Procedure section 1003 states that, "[e]very direction of a court . . . not included in a judgment, is denominated an order," and "[a]n application for an order is a motion." An order to show cause is considered the equivalent of a notice of motion, but with a citation to appear and show cause annexed. (*Reifler* v. *Superior Court, supra,* 39 Cal.App.3d 479, 483, and cases cited therein.)

Thus, with the exception of orders to show cause regarding contempt (see Code Civ. Proc., §§ 1217, 1218), the court is empowered to decide the

issues raised by order to show cause on declarations, without oral testimony. However, the trial court is vested with discretion to receive oral testimony on an order to show cause, and where the court declines to exercise that discretion the matter must be remanded. (*Reifler* v. *Superior Court, supra,* 479, 485.) Likewise, the order must be reversed and the matter remanded upon a showing that the court abused its discretion in declining leave to produce oral testimony. (See *Beckett* v. *Kaynar Mfg. Co., supra,* 49 Cal.2d 695, 699.)

Rules 10 and 901 of the Los Angeles Superior Court Manual of Policy and Procedure for Writs and Receivers matters, cited by appellants, are consistent with the above authorities, in that they allow the court in its discretion to grant a plenary hearing on charging orders.

In a case of direct conflict in testimony, it may be important for the judge to have an opportunity to see and hear the witnesses and judge their credibility. (See *Ruse* v. *Fugua* (1962) 200 Cal.App.2d 719, 724 [19 Cal.Rptr. 634].)

■ Here, the order to show cause regarding charging Nemour's partnership interest was a matter which could, in the court's discretion, be decided upon declarations. The court recognized that it had discretion to accept oral testimony, but exercised that discretion in favor of deciding the matter upon the declarations, which incorporated the depositions and documentary evidence.

The court did not abuse its discretion in making this ruling. The documents and depositions were very extensive, and it was the circumstances and facts of the transactions which supported the court's ruling, rather than the demeanor of the witnesses. Appellants had an opportunity to present documentary evidence, and to take and introduce into evidence depositions of their own, but did not do so. Under these circumstances, a plenary hearing was not necessary.

## II. *Substantial Evidence*

■ Appellants contend that there was not substantial evidence that the transfer of Nemour's partnership interest to William, Jr., was a fraud upon creditors. In support of this contention, appellants recite only the evidence favorable to their position. For this reason alone, their contention could be rejected. (See *Estate of D'India* (1976) 63 Cal.App.3d 942, 950 [134 Cal.Rptr. 165].) However, we also reject this contention on its merits.

Under the Uniform Fraudulent Conveyance Act (Civ. Code, §§ 3439-3439.12), "[e]very conveyance made . . . with actual intent . . . to hinder,

delay, or defraud . . . creditors, is fraudulent as to . . . creditors." (Civ. Code, § 3439.07.)

Proof of fraudulent intent often consists of "*inferences* from the circumstances surrounding the transaction, such as secrecy or concealment of the debtor, the relationship of the parties . . . ." (5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, § 147, p. 3510, and cases cited therein.)

A review of the record establishes that the trial court's findings were supported by substantial evidence, in the form of depositions, bank records, and declarations, showing that Nemour had received less than $300,000; that formalities were not observed in the purported transfer of his interest; that the lack of notarial records made the February 2 date of Nemour's purported withdrawal highly suspect; and that Nemour continued as an authorized signatory on the partnership bank account after his purported withdrawal.

### DISPOSITION

The order is affirmed.

McClosky, Acting P. J., and Dunn, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.