[No. A110868. First Dist., Div. One. Sept. 12, 2006.]

LENA VELEZ, Plaintiff and Appellant, v.
KRISTA SMITH, Defendant and Respondent.

**COUNSEL**

Lena Velez, in pro. per., for Plaintiff and Appellant.

Caren Callahan for Defendant and Respondent.

**OPINION**

**SWAGER, J.**—The trial court granted the motion of respondent to strike appellant's petition for dissolution of a domestic partnership. We conclude that appellant is not eligible to proceed with the dissolution action under the current domestic partnership laws, and must bring her other claims in a separate civil action. We therefore affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

Most of the evidence before us is not in material dispute. Appellant and respondent met in 1989, and subsequently began a domestic partnership relationship. By July 7, 1994, they filed a declaration of domestic partnership with the City and County of San Francisco. In March of 1996, they registered with the City and County of San Francisco as domestic partners a second time, attended a public commitment ceremony in which they exchanged vows modeled upon traditional marriage vows, and received a domestic partnership ceremony certificate.

Thereafter, they acted and held themselves out as domestic partners. They lived and purchased real property together. They purchased and shared ownership of personal property, including automobiles, pension benefits, insurance coverage and benefits, and family pets. They were jointly responsible for household living expenses, and maintained joint bank accounts in which they commingled funds. For a few years, after appellant became disabled with multiple sclerosis, respondent even listed her as a dependent on tax returns. Appellant was provided with health coverage and listed as an alternate payee of retirement benefits with respondent's employer, the San Francisco Fire Department. They were never registered as domestic partners with the State of California, however.

On November 23, 2004, respondent filed a "Notice for Ending a Domestic Partnership" with the San Francisco County Clerk, a copy of which was delivered by certified mail to appellant a few days later. Appellant commenced the present action by filing a petition for dissolution of domestic partnership on December 6, 2004, which listed a date of marriage as July 7, 1994, and the date of separation as November 23, 2004.

On December 13, 2004, respondent's counsel notified the attorney for appellant by letter that the dissolution action was "procedurally defective" and the court lacked "jurisdiction to hear it." The letter stated that unless appellant dismissed the action with prejudice a motion for sanctions (Code Civ. Proc., § 128.7) would be filed by respondent.

Appellant filed an amended petition for dissolution on January 31, 2005, in which she requested dissolution of a domestic partnership with respondent, division of the accumulated partnership property, termination of jurisdiction to award support to respondent, and attorney fees. She also sought consolidation with her dissolution action of any related proceeding to determine the partnership rights of the parties.

---

[1] Appellant's request in her opening brief for us to take additional evidence of attached exhibits is denied.

Respondent promptly moved to strike the amended petition (Code Civ. Proc., § 436) as beyond the jurisdiction of the family law court. In her opposition to the motion, appellant requested "an evidentiary short cause trial" to present testimony to establish her standing as a "putative domestic partner" and her "detrimental reliance" upon respondent's promise not to terminate her rights as a domestic partner. The trial court found that adequate "documentation" had been presented to rule on the issue of the right of appellant to proceed with her dissolution action in the family law court, and declined to grant appellant the opportunity to present testimonial evidence. The trial court then found that appellant's amended petition for dissolution of domestic partnership was "without legal basis," and granted the motion to strike the pleading. This appeal followed.

## DISCUSSION

I. *The Failure of the Trial Court to Afford Appellant an Evidentiary Hearing.*

We first confront appellant's contention that the trial court erred by ruling on respondent's motion to strike the amended petition "without giving her any opportunity to present specific evidence to support her claim of standing" under the domestic partnership laws to proceed with the dissolution action. Appellant claims that she was entitled to present testimony on the "presence or absence of Domestic Partnership registration," her "objectively measured, good faith belief in the *bona fides* of the Domestic Partnership," the "intent" of respondent to enter into a valid domestic partnership, and the "existence of the long-vested contractual provision" between the parties that was "tantamount to marriage." She asserts that by denying her the "chance to present evidence and cross-examine witnesses," the trial court violated her due process rights and "committed structural error" which requires "reversal *per se.*"

 We find that the trial court did not err by declining to grant appellant's request to present testimonial evidence at the hearing on the motion to strike. "Motions are normally heard on affidavits alone." (*Crocker Citizens Nat. Bank v. Knapp* (1967) 251 Cal.App.2d 875, 880 [60 Cal.Rptr. 66]; see also *McDonald v. Superior Court* (1994) 22 Cal.App.4th 364, 370 [27 Cal.Rptr.2d 310].) The trial court is empowered to determine motions upon affidavits, and has the discretion to refuse oral testimony. (*Beckett v. Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749]; *Eddy v. Temkin* (1985) 167 Cal.App.3d 1115, 1121 [213 Cal.Rptr. 597]; *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 483 [114 Cal.Rptr. 356]; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258]; *Armstrong v. Armstrong* (1947) 81 Cal.App.2d 322, 326–327 [183 P.2d 905].) " ' "Discretion is abused whenever . . . the court exceeds the bounds of reason, all of the

circumstances before it being considered." ' [Citation.] . . . 'A trial court's exercise of discretion will be upheld if it is based on a "reasoned judgment" and complies with the ". . . legal principles and policies appropriate to the particular matter at issue." ' [Citation.]" (*Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 94 [5 Cal.Rptr.2d 220].)

Here, the motion to strike tested the sufficiency of the allegations of the amended petition to determine appellant's right to the relief requested—that is, to dissolution of a domestic partnership. If a complaint fails to state facts sufficient to constitute a cause of action as required by Code of Civil Procedure section 425.10,[2] it is not "drawn in conformity with the laws of this state," and the defendant may take advantage of the pleading defect by moving to strike and dismiss the complaint. (*Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 631 [219 Cal.Rptr. 116]; see also *Monahan v. Blossom* (1948) 88 Cal.App.2d 951, 952 [199 P.2d 738].) A motion labeled as a motion to strike a pleading, based upon the ground it fails to state facts sufficient to constitute a cause of action, may also be treated as a motion for judgment on the pleadings. (See *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198]; *Pierson v. Sharp Memorial Hospital, Inc.* (1989) 216 Cal.App.3d 340, 342–343 [264 Cal.Rptr. 673].) In either case, the purpose of the motion is to test the sufficiency of the pleadings, so the court does not consider testimonial evidence or information extraneous to the complaint and judicially noticed matters. (*Shin v. Kong* (2000) 80 Cal.App.4th 498, 502–503 [95 Cal.Rptr.2d 304].) "A trial court ruling on the motion must consider only the face of the complaint and matters subject to judicial notice, accept as true the properly pleaded factual allegations of the complaint, and liberally construe the complaint." (*Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 849 [40 Cal.Rptr.3d 653].) " ' "[W]e look only to the face of the pleading under attack . . . ." ' . . .' [Citation.]" (*Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311, 1317 [26 Cal.Rptr.3d 452].)

Given the nature of the motion, the trial court properly limited the inquiry to the pleadings and affidavits submitted, which incorporated documentary evidence of respondent's notice of termination of domestic partnership mailed to appellant and filed with the county clerk. The essence of respondent's motion as presented to the trial court was that the action filed by appellant sought improper relief in the form of dissolution of a domestic partnership that did not exist, and thus was not subject to dissolution in the family court

---

[2] Code of Civil Procedure section 436 reads: "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."

as requested in the amended petition. The motion was appropriately resolved without taking into account any testimonial evidence proffered by appellant. The evidence appellant sought to elicit at an oral hearing was related to issues and claims that were not within the scope of the court's consideration of the propriety of the dissolution petition. To decide the matter of appellant's entitlement to the relief requested in the dissolution petition, the court was not required to consider the testimony of witnesses on the intent of the parties to enter into a valid domestic partnership or the nature of any agreement between them. Appellant's right to proceed under the domestic partnership laws as requested in the amended petition was amenable to resolution based exclusively upon the pleading and the scant documentary evidence presented. We therefore conclude that the trial court did not abuse its discretion by refusing appellant leave to present oral testimony and deciding the motion to strike upon the facts contained in the pleading and affidavits. (*Eddy v. Temkin, supra,* 167 Cal.App.3d 1115, 1120–1121; *Crocker Citizens Nat. Bank v. Knapp, supra,* 251 Cal.App.2d 875, 880; *Tyree v. Epstein* (1950) 99 Cal.App.2d 361, 364–365 [221 P.2d 1002].)

## II. *The Finding That Appellant Is Not Entitled to Proceed With the Dissolution Action.*

We turn to the substance of the appeal: the claim that the court erred by finding the amended petition defective and dismissing the dissolution action. Appellant argues that she is entitled to proceed with her dissolution action under the domestic partnership law as amended in 2003 (the Domestic Partner Act), which extended many of the rights and duties of marriage to persons registered as domestic partners on and after January 1, 2005. (Stats 2003, ch. 421, § 1; Legis. Counsel's Dig., Assem. Bill No. 205 (2003–2004 Reg. Sess.).) Appellant maintains that she and respondent acted as domestic partners and were registered as domestic partners with the City and County of San Francisco before the effective date of the Domestic Partner Act. She asserts that registration in accordance with state law is not a jurisdictional prerequisite to the present dissolution action. She also submits that the registration requirement is a "futuristic mandate," and the amendments to the law may be given "retrospective application" to her relationship with respondent.

We must resolve appellant's claims in the procedural context of respondent's motion to strike the amended petition on the ground that it fails to state a claim for dissolution of a domestic partnership. The motion is granted only "if the complaint on its face fails to state a cause of action." (*Pierson v. Sharp Memorial Hospital, Inc., supra,* 216 Cal.App.3d 340, 342–343.) On review we must determine if the pleading "states a cause of action as a matter of law." (*Yancey v. Superior Court* (1994) 28 Cal.App.4th 558, 562 [33

Cal.Rptr.2d 777].) In order to survive the motion to strike, appellant must establish "the ultimate facts showing an entitlement" to the relief she has requested in her petition. (*Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255 [79 Cal.Rptr.2d 747]; see also *Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 166 [203 Cal.Rptr. 556]; *Blegen v. Superior Court* (1981) 125 Cal.App.3d 959, 962–963 [178 Cal.Rptr. 470].) "The grounds for the motion must appear on the face of the complaint, and in any matters subject to judicial notice. (Code Civ. Proc., § 438, subd. (d).) The court accepts as true all material factual allegations, giving them a liberal construction, but it does not consider conclusions of fact or law, opinions, speculation, or allegations contrary to law or judicially noticed facts." (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254 [2 Cal.Rptr.3d 739]; see also *Farmers Ins. Exchange v. Superior Court, supra,* 137 Cal.App.4th 842, 849.) "We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory." (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298 [38 Cal.Rptr.3d 316]; see also *Wise v. Pacific Gas & Electric Co.* (2005) 132 Cal.App.4th 725, 738 [34 Cal.Rptr.3d 222]; *Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC, supra,* 127 Cal.App.4th 1311, 1317.)

Resolution of appellant's claims that she may proceed with her domestic partnership dissolution action also requires our examination of the past and current statutory domestic partnership laws. Appellant does not dispute that as a domestic partner, prior to the 2003 amendment to the law she had no statutory right to bring a dissolution action in the family law court. "In 1999, the Legislature passed Assembly Bill No. 26 [(Bill 26)], which became effective on January 1, 2000. Among other things, [Bill 26] added division 2.5, entitled 'Domestic Partner Registration' (commencing with section 297), to the Family Code. (Stats. 1999, ch. 588, § 2.) This division set forth the definitions of domestic partners and domestic partnership, the procedural steps to be taken to register or to terminate a domestic partnership, the legal effect of registering a domestic partnership, and preemption provisions. [¶] As originally enacted, Family Code section 299.5 provided that '[r]egistration as a domestic partner under this division shall not be evidence of, or establish, any rights existing under law other than those expressly provided to domestic partners in this division and Section 1261 of the Health and Safety Code.' [Bill 26] 'require[d] a health facility to allow a patient's domestic partner and other specific persons to visit a patient, except under specified conditions' and 'authorize[d] state and local employers to offer health care coverage and other benefits to domestic partners.' (Legis. Counsel's Digest, [Bill 26; Stats. 1999, ch. 58, § 1].) The new legislation conferred no other rights." (*Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1411–1412 [26 Cal.Rptr.3d 623].)[3]

---

[3] All further statutory references are to the Family Code unless otherwise indicated.

"Effective in the year 2002, the Legislature amended the domestic partnership law to add a substantial number of new rights and obligations bringing domestic partnerships much closer to marriages. Among other things, the amendments enabled domestic partners to make medical decisions for each other, adopt their partner's child, use sick leave to care for an ailing partner and participate in their partner's conservatorship." (*Holguin v. Flores* (2004) 122 Cal.App.4th 428, 434 [18 Cal.Rptr.3d 749], fn. omitted.)

"In 2003, the Legislature amended the domestic partnership laws again in The California Domestic Partner Rights and Responsibilities Act of 2003 (the Act). (Stats. 2003, ch. 421, § 4 (Assem. Bill No. 205), eff. Jan. 1, 2005.)" (*Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 21 [26 Cal.Rptr.3d 687].) The 2003 Domestic Partner Act not only amended the definition of domestic partnership, but "also significantly expanded the rights and protections provided to registered domestic partners. Specifically, it 'extend[ed] the rights and duties of marriage to persons registered as domestic partners *on and after January 1, 2005*.' (Legis. Counsel's Digest, Assem. Bill 205[; Stats 421, § 1].) Assembly Bill 205 added section 297.5 to the Family Code. It provided in part: '(a) *Registered domestic partners* shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses.' Family Code section 297.5 (Stats. 2003, ch. 421, § 4), and the amendment to Family Code section 297 (Stats. 2003, ch. 421, § 3), became operative on January 1, 2005. (Stats. 2003, ch. 421, § 14.)" (*Armijo v. Miles, supra,* 127 Cal.App.4th 1405, 1413, italics added; see also *Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 837–838 [31 Cal.Rptr.3d 565, 115 P.3d 1212].)[4] "Section 15 of the Domestic Partner Act, furthermore, requires that the act be 'construed liberally in order to secure to eligible couples who *register as domestic partners* the full range of legal rights, protections and benefits, as well as all of the responsibilities, obligations, and duties to each other, to their children, to third parties and to the state, as the laws of California extend to and impose upon spouses.' (Stats. 2003, ch. 421, § 15.)" (*Koebke v. Bernardo Heights Country Club, supra,* at p. 838, italics added.)

---

[4] "With respect to discrimination, subdivision (f) provides: 'Registered domestic partners shall have the same rights regarding nondiscrimination as those provided to spouses.' (§ 297.5, subd. (f).) Moreover, with one exception pertaining to eligibility for long-term care plans, subdivision (h) prohibits any public agency in California from discriminating against 'any person or couple on the ground that the person is a registered domestic partner rather than a spouse or that the couple [consists of] registered domestic partners rather than spouses.' (§ 297.5, subd. (h).)" (*Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 839.)

The declarations that accompanied the enactment of the 2003 amendments left no doubt of the legislative intent to greatly expand the rights and responsibilities of properly registered domestic partners. "[T]he Legislature explained that 'This act is intended to help California move closer to fulfilling the promises of inalienable rights, liberty, and equality contained in Sections 1 and 7 of Article 1 of the California Constitution by providing all caring and committed couples, regardless of their gender or sexual orientation, the opportunity to obtain essential rights, protections, and benefits and to assume corresponding responsibilities, obligations, and duties and to further the state's interests in promoting stable and lasting family relationships, and protecting Californians from the economic and social consequences of abandonment, separation, the death of loved ones, and other life crises.' (Stats. 2003, ch. 421, § (1)(a).) [¶] The Legislature further declared that 'Expanding the rights and creating responsibilities of registered domestic partners would further California's interests in promoting family relationships and protecting family members during life crises, and would reduce discrimination on the bases of sex and sexual orientation in a manner consistent with the requirements of the California Constitution.' (Stats. 2003, ch. 421, § (1)(b).)" *(Bouley v. Long Beach Memorial Medical Center* (2005) 127 Cal.App.4th 601, 612 [25 Cal.Rptr.3d 813].) "It is clear from both the language of section 297.5 and the Legislature's explicit statements of intent that a chief goal of the Domestic Partner Act is to equalize the status of registered domestic partners and married couples." *(Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 839.)

To obtain the benefits of the current law, however, compliance with the provisions for formation of a domestic partnership under the Domestic Partner Act, including formal registration, is necessary. "[U]nder the Domestic Partner Act, domestic partners, like '[f]ormally married couples,' have been 'granted significant rights and bear important responsibilities toward one another which are not shared' by couples who cohabit or who have *not registered* as domestic partners." *(Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 845, italics added.) The Legislature had granted domestic partners "legal recognition comparable to marriage both procedurally and in terms of the substantive rights and obligations granted to and imposed upon the partners," but only to "couples who meet the requirements of establishing a domestic partnership under the Domestic Partner Act and who have *registered under that law.*" *(Id.,* at p. 845, italics added.)

"The Registration Statute . . . governs the creation and registration of domestic partnerships by imposing detailed requirements and procedures that two individuals *must follow* before obtaining recognition of their union by the State of California." *(S.D. Myers v. City and County of San Francisco* (9th Cir. 2003) 336 F.3d 1174, 1178, italics added.) "In creating the new status of domestic partnerships the Legislature declared: 'Domestic partners are two

adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring.' To establish a domestic partnership both partners *must meet the following qualifications*: (1) share a common residence; (2) agree to be jointly responsible for each other's basic living expenses incurred during the partnership; (3) not be married or a member of another domestic partnership; (4) not be related by blood in a way which would prevent them from being married under state law; (5) be at least 18 years of age; (6) be of the same sex or one partner be over age 62 and eligible for benefits under the Social Security Act based on age; (7) be capable of consenting to a domestic partnership; (8) not have previously filed a 'Declaration of Domestic Partnership' which has not been terminated; (9) *file a Declaration of Domestic Partnership with the Secretary of State*. [¶] Persons desiring to become domestic partners must file a Declaration of Partnership with the Secretary of State declaring they meet the criteria described in the preceding paragraph. Upon receipt of a properly completed form the Secretary is to 'register the Declaration of Domestic Partnership in a registry of those partnerships . . . .' " (*Holguin v. Flores, supra,* 122 Cal.App.4th 428, 433–434, fns. omitted, italics added; see also *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 119 [33 Cal.Rptr.3d 46, 117 P.3d 660].)

The registration statute "also describes the fees and processing materials necessary to file a notice of domestic partnership with the state, [citation], and the conditions under which a domestic partnership ceases to exist, [citation]." (*S.D. Myers v. City and County of San Francisco, supra,* 336 F.3d 1174, 1178.) "Registered domestic partners occupy a legal status that, like marital status, is formalized, public and verifiable. (§§ 297, 298, 298.5, 299.) The Declaration of Domestic Partnership that registered domestic partners are required to file with the Secretary of State (§ 297, subd. (b)) provides an easily verifiable method of determining whether a couple is in a registered domestic partnership." (*Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 847.)[5]

---

[5] Section 297 reads: "(a) Domestic partners are two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring. [¶] (b) A domestic partnership shall be established in California when both persons file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division, and, at the time of filing, all of the following requirements are met: [¶] (1) Both persons have a common residence. [¶] (2) Neither person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated, dissolved, or adjudged a nullity. [¶] (3) The two persons are not related by blood in a way that would prevent them from being married to each other in this state. [¶] (4) Both persons are at least 18 years of age. [¶] (5) Either of the following: [¶] (A) Both persons are members of the same sex. [¶] (B) One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in 42 U.S.C. Section 402(a) for old-age insurance benefits or Title XVI of the Social Security Act as defined in 42 U.S.C. Section 1381 for aged individuals. Notwithstanding any

■ The record before us definitively reveals that appellant and respondent did not fulfill the registration requirements of the Domestic Partner Act. While they twice registered with the City and County of San Francisco, the record does not show that they made any attempt to file the necessary declaration of domestic partnership with the Secretary of State pursuant to section 298.5.[6] Local law and the state Domestic Partner Act are not equivalent; compliance with one is not compliance with the other. (See *S.D. Myers v. City and County of San Francisco, supra,* 336 F.3d 1174, 1177–1178.)

■ In the context of the right of a surviving domestic partner to bring suit under amendments to the wrongful death statutes, the courts have adopted the position that registration of the partnership is a "prerequisite" to "standing" to sue for the deceased partner's wrongful death. (*Armijo v. Miles, supra,* 127 Cal.App.4th 1405, 1414; see also *Holguin v. Flores, supra,* 122 Cal.App.4th 428, 432–437.) In *Armijo v. Miles, supra,* at page 1414, the court declared "that a surviving domestic partner can sue for wrongful death under the 2002 version of the wrongful death statute only if at the time of the decedent's death the partnership had been *registered with the Secretary of State.*" (Italics added.) We adopt the same reasoning here to conclude that registration with the Secretary of State, as specified in the statutes, is a prerequisite to pursuing a dissolution action under the Domestic Partner Act.

■ Further, respondent effectively terminated whatever domestic relationship that existed before the operative date of the Domestic Partner Act. When respondent sent a "Notice for Ending a Domestic Partnership" to appellant in November of 2004, a domestic partnership was subject to termination if one partner mailed a notice of termination to the other, and was automatically terminated if one of the partners died or married or the partners no longer

---

other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over the age of 62. [¶] (6) Both persons are capable of consenting to the domestic partnership. [¶] (c) 'Have a common residence' means that both domestic partners share the same residence. It is not necessary that the legal right to possess the common residence be in both of their names. Two people have a common residence even if one or both have additional residences. Domestic partners do not cease to have a common residence if one leaves the common residence but intends to return."

[6] Section 298.5 reads: "(a) Two persons desiring to become domestic partners may complete and file a Declaration of Domestic Partnership with the Secretary of State. [¶] (b) The Secretary of State shall register the Declaration of Domestic Partnership in a registry for those partnerships, and shall return a copy of the registered form and a Certificate of Registered Domestic Partnership to the domestic partners at the mailing address provided by the domestic partners. [¶] (c) No person who has filed a Declaration of Domestic Partnership may file a new Declaration of Domestic Partnership or enter a civil marriage with someone other than their registered domestic partner unless the most recent domestic partnership has been terminated or a final judgment of dissolution or nullity of the most recent domestic partnership has been entered. This prohibition does not apply if the previous domestic partnership ended because one of the partners died."

shared a common residence.[7] (*Holguin v. Flores, supra,* 122 Cal.App.4th 428, 434.) Respondent acted to end her domestic partnership with appellant following notice sent to state-registered partners—a group that did not include appellant and respondent—by the Secretary of State pursuant to statutory directives (§ 299.3, subd. (a)) that described the binding effect of the impending momentous changes in the legal consequences of a legally recognized domestic relationship without termination.[8] The record conclusively

---

[7] Under current law the requirements for termination of a domestic partnership have became more stringent. Now, "If there are no children of the union, if the partnership is not more than five years in duration, and if the partners meet certain conditions relating to property and debts, they may terminate the relationship simply by filing with the Secretary of State a Notice of Termination of Domestic Partnership . . . . [¶] Where the domestic partnership is long term, involves children, or involves substantial property, the procedure for terminating the partnership shares more similarities to dissolution of a marriage and does require judicial intervention. (§§ 299, subd. (d), 2330.)" (*Knight v. Superior Court, supra,* 128 Cal.App.4th 14, 31.)

We also note that the termination notice sent by respondent complied with section 62.4 of the San Francisco Administrative Code, of which we have taken judicial notice. (Evid. Code §§ 452, 459.) Section 62.6, subdivision (b) of the San Francisco Administrative Code adds that, "If a domestic partnership ends, the partners incur no further obligations to each other."

[8] Section 299.3, subdivision (a) provides in full: "On or before June 30, 2004, and again on or before December 1, 2004, and again on or before January 31, 2005, the Secretary of State shall send the following letter to the mailing address on file of each registered domestic partner who registered more than one month prior to each of those dates: 'Dear Registered Domestic Partner: [¶] This letter is being sent to all persons who have registered with the Secretary of State as a domestic partner. [¶] Effective January 1, 2005, California's law related to the rights and responsibilities of registered domestic partners will change (or, if you are receiving this letter after that date, the law has changed, as of January 1, 2005). With this new legislation, for purposes of California law, domestic partners will have a great many new rights and responsibilities, including laws governing community property, those governing property transfer, those regarding duties of mutual financial support and mutual responsibilities for certain debts to third parties, and many others. The way domestic partnerships are terminated is also changing. After January 1, 2005, under certain circumstances, it will be necessary to participate in a dissolution proceeding in court to end a domestic partnership. [¶] Domestic partners who do not wish to be subject to these new rights and responsibilities MUST terminate their domestic partnership before January 1, 2005. Under the law in effect until January 1, 2005, your domestic partnership is automatically terminated if you or your partner marry or die while you are registered as domestic partners. It is also terminated if you send to your partner or your partner sends to you, by certified mail, a notice terminating the domestic partnership, or if you and your partner no longer share a common residence. In all cases, you are required to file a Notice of Termination of Domestic Partnership. [¶] If you do not terminate your domestic partnership before January 1, 2005, as provided above, you will be subject to these new rights and responsibilities and, under certain circumstances, you will only be able to terminate your domestic partnership, other than as a result of your domestic partner's death, by the filing of a court action. [¶] Further, if you registered your domestic partnership with the state prior to January 1, 2005, you have until June 30, 2005, to enter into a written agreement with your domestic partner that will be enforceable in the same manner as a premarital agreement under California law, if you intend to be so governed. [¶] If you have any questions about any of these changes, please consult an attorney. If you cannot find an attorney in your locale, please contact your county bar association for a referral. [¶] Sincerely, [¶] The Secretary of State.' "

establishes that the parties' domestic partnership was never validly formed for purposes of the Domestic Partner Act, and in any event was successfully terminated before the operative date of the law that granted appellant the rights she seeks to pursue in the present dissolution action.

Thus, when appellant's dissolution petition was filed, there was no valid domestic partnership to dissolve. Compliance with the provisions for formation of a valid domestic partnership is mandatory for two individuals seeking to obtain legal recognition of their union and receive the benefits afforded by the Domestic Partner Act in California. (*S.D. Myers v. City and County of San Francisco, supra,* 336 F.3d 1174, 1178; *Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 850.) As with the provisions that govern entry into a valid marriage, without satisfaction of specified statutory requirements, no discretion exists to recognize a lawful domestic partnership. (See *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1081–1082 [17 Cal.Rptr.3d 225, 95 P.3d 459].) If spouses do not follow the specified legal procedures to effectuate and prove a valid marriage, the court has no jurisdictional foundation for a dissolution proceeding to adjudicate the res of the marriage. (*Zaragoza v. Superior Court* (1996) 49 Cal.App.4th 720, 724–725 [57 Cal.Rptr.2d 1]; *In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436, 1444 [16 Cal.Rptr.2d 238].) So too with the present action filed by appellant pursuant to the Domestic Partner Act. Absent a valid domestic partnership created in accordance with statutory requirements, the court had no jurisdiction to act upon appellant's dissolution petition.

## A. *Retroactive Application of the Domestic Partner Act.*

Appellant seeks to circumvent the domestic partnership registration requirements by claiming that the Domestic Partner Act must be given "retroactive application" under section 4 so as not to "divest her of already vested contractual rights." She maintains that her relationship with respondent "existed prior to January 1, 2005," the effective date of the Domestic Partner Act, so she is entitled to have the amendments to the law apply to "preexisting facts." She adds that "retroactive application of the statute gives practical effect" to the "mutual promises" of the parties related to their domestic relationship.

██ We agree with appellant that the general directive in section 4 favors retroactive application of changes in the Family Law Code, despite the general rule that favors prospective application of changes in the law.[9] Subdivision (c) of section 4 reads: "Subject to the limitations provided in this

---

[9] " 'Generally, statutes operate prospectively only.' [Citations.] '[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals

section, the new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, commencement of a proceeding, making of an order, or taking of an action." The unambiguous intent of the Legislature gleaned from subdivision (c) is that amendments to the Family Code are intended to apply to past events unless, as specified in subdivision (b), the new law expressly provides otherwise, or the case fits into one of the particular exceptions enumerated in the remainder of section 4.

Where we part company with appellant is in her view of the retroactive effect of the Domestic Partner Act upon the present action. She essentially wants to receive the benefits of the amendments to the domestic partnership laws, but avoid the registration requirements and termination provisions of those same amendments. If appellant and respondent had registered their domestic relationship with the Secretary of State before January 1, 2005, as mandated by section 297, subdivision (b), we would have no difficulty in applying the new law to their previously existing and registered partnership, as the Domestic Partner Act intends. However, the simple fact is that retroactive application of the Domestic Partner Act is of no benefit to appellant because her domestic partnership with respondent was *never* registered with the Secretary of State as the law demands, either before or after the new law became operative. Appellant has no vested rights to proceed with dissolution of a domestic partnership that was not properly registered with the Secretary of State before the effective date of the statute. Appellant may have vested contractual or other rights associated with her relationship with respondent, but none that are granted by the Domestic Partner Act.

Respondent also acted to terminate the domestic relationship in accordance with the terms stated in section 299.3, which clearly evinces a legislative intent to afford domestic partners the opportunity to avoid changes in the law by termination of their relationships before the effective date of the Domestic Partner Act. The Legislative Counsel's Digest of Assembly Bill No. 205 (2003–2004 Reg. Sess.) specifies that the rights and duties under the

---

should have an opportunity to know what the law is and to conform their conduct accordingly . . . . For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." ' [Citations.] 'The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact.' [Citation.]" (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 [20 Cal.Rptr. 3d 428, 99 P.3d 1015].) "[I]t has long been established that a statute that interferes with antecedent rights will not operate retroactively unless such retroactivity be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' [Citations.] '[A] statute may be applied retroactively only if it contains express language of retroactively *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application.' [Citation.]" (*Ibid.*)

Domestic Partner Act are extended to " 'persons registered as domestic partners on and after January 1, 2005.' " (*Armijo v. Miles, supra,* 127 Cal.App.4th 1405, 1413.) Section 299.3 also directed the Secretary of State to notify domestic partners who do not wish to be subject to the " 'great many new rights and responsibilities' " contained in the Domestic Partner Act that they " 'MUST terminate their domestic partnership before January 1, 2005.' " Further, subdivision (d) of section 4 provides, in part, that, "If a document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law . . . ."[10] Thus, respondent effectuated a lawful termination of the domestic partnership according to the law that was operative at the time. To find that the provisions of the Domestic Partner Act apply here despite respondent's timely termination of the relationship before the law became operative would impermissibly impair the vested rights expressly exercised by her specifically to avoid the rights and responsibilities she faced without a termination.[11] (See *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 442–443 [224 Cal.Rptr. 333, 715 P.2d 253]; *In re Marriage of Buol* (1985) 39 Cal.3d 751, 759 [218 Cal.Rptr. 31, 705 P.2d 354]; *In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 255 [30 Cal.Rptr. 3d 5]; *Armijo v. Miles, supra,* at p. 1417.)

■ "Our state's high court has long held that the retroactive application of a statute may be unconstitutional if it deprives an individual of a vested right without due process of law. [Citation.] 'A right is "vested" when it is " 'already possessed' " or " 'legitimately acquired.' " ' [Citations.]" (*Armijo v. Miles, supra,* at p. 1417; see also *In re Marriage of McClellan, supra,* at p. 255.) Nor do we perceive any public interest in expanding and retroactively applying the Domestic Partner Act to partners where one of them has expressly elected to opt out of the system to avoid its rights and obligations. Appellant is not entitled to apply the Domestic Partner Act retroactively to

---

[10] Subdivision (d) of section 4 states in full: "If a document or paper is filed before the operative date, the contents, execution, and notice thereof are governed by the old law and not by the new law; but subsequent proceedings taken after the operative date concerning the document or paper, including an objection or response, a hearing, an order, or other matter relating thereto is governed by the new law and not by the old law."

[11] Subdivision (h) of section 4 enumerates a similar exception to retroactive application of Family Law Code provisions; it provides: "If a party shows, and the court determines, that application of a particular provision of the new law or of the old law in the manner required by this section or by the new law would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons in connection with an event that occurred or circumstance that existed before the operative date, the court may, notwithstanding this section or the new law, apply either the new law or the old law to the extent reasonably necessary to mitigate the substantial interference."

We also observe that with the termination notice respondent did not "avoid the legal and contractual obligations" that she may have as a result of the relationship of the parties, as appellant suggests. The termination notice merely impacts the rights and obligations of the parties under the Domestic Partner Act.

pursue a dissolution action pursuant to amendments to the law without compliance with its requirements.

### B. *Appellant's Rights As a Former Domestic Partner.*

 As an additional basis for obtaining the benefits of the Domestic Partner Act appellant makes a fleeting reference to the "protections for former partners" afforded by section 297.5, subdivision (b), which provides: "*Former registered* domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon former spouses." (Italics added.) We interpret the qualifying term "registered" in section 297.5, subdivision (b), to encompass only those domestic partners previously registered in California with the Secretary of State. The registration of appellant and respondent in the City and County of San Francisco neither satisfies the requirements of the Domestic Partner Act nor constitutes registration "validly formed in another jurisdiction" that was "substantially equivalent to a domestic partnership as defined in this part" and is given legal recognition in section 299.2. We are persuaded that the term "former" domestic partner means someone who, like a former spouse, previously became eligible by complying with state registration requirements to qualify for the full range of benefits, rights, protections and responsibilities extended by the Domestic Partner Act. (See *Koebke v. Bernardo Heights Country Club, supra,* 36 Cal.4th 824, 838.) Appellant does not qualify as a former registered domestic partner within the meaning of section 297.5, subdivision (b).

### C. *Appellant's Rights As a Putative Domestic Partner.*

Finally, appellant seeks standing to proceed with the dissolution action as a "putative" domestic partner, based upon her good faith belief in the validity of her domestic partnership with respondent, and reliance upon it to maintain her "healthcare benefits" through respondent's employer. Under the putative spouse doctrine, "Where a *marriage* is invalid due to some legal infirmity, an innocent party may be entitled to relief under the putative spouse doctrine. The doctrine is codified in section 2251, which provides in relevant part: '(a) If a determination is made that a *marriage* is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse. [¶] (2) If the division of property is in issue, divide . . . that property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable. . . .' [¶] Putative spouse status may be based on the

reasonable expectations of the parties to an alleged *marriage* entered into in good faith where the marriage is void or voidable pursuant to section 2200, 2201 or 2210. It also applies where the *marriage* is invalid for reasons other than those enumerated in sections 2200, 2201, and 2210." (*Estate of DePasse* (2002) 97 Cal.App.4th 92, 107 [118 Cal.Rptr.2d 143], italics added.) " 'It is the law in this state that on dissolution of a putative marriage the property which the de facto spouses have acquired as a result of their joint efforts is to be treated as though it was the accumulation of a valid marriage.' [Citations.]" (*Kunakoff v. Woods* (1958) 166 Cal.App.2d 59, 63 [332 P.2d 773].)

■ We conclude that the putative spouse doctrine does not save appellant's dissolution action. The Domestic Partner Act seeks to create "substantial legal equality between domestic partners and spouses," but nothing in the statutory scheme includes within the enumerated rights granted to domestic partners any form of putative spouse recognition. (*Koebke v. Bernardo Heights Country Club, supra*, 36 Cal.4th 824, 845.) Despite the most recent amendments to the domestic partnership laws, domestic partners are not in all respects treated the same as spouses. While the Domestic Partner Act expanded the rights and responsibilities of registered domestic partners, "the Legislature has not created a 'marriage' by another name or granted domestic partners a status equivalent to married spouses. In fact, domestic partners do not receive a number of marital rights and benefits. For example, they may not file joint tax returns and their earned income is not treated as community property for state income tax purposes (§ 297.5, subd. (g)), and they are not entitled to numerous benefits provided to married couples by the federal government (§ 297.5, subd. (k)), such as marital benefits relating to Social Security, Medicare, federal housing, food stamps, veterans' benefits, military benefits, and federal employment benefit laws. [¶] And prerequisites for the formation of domestic partnerships differ from marriage. Persons under the age of 18 who wish to marry may do so with parental consent (§ 302); however, there is no similar provision for minors to register as domestic partners. In addition, homosexuals must share a common residence before they can register as domestic partners (§ 297, subd. (b)(1)), but there is no similar limitation for persons who wish to marry. Thus, prison inmates have the right and ability to marry despite the fact they are incarcerated, do not currently reside with their intended spouse, and might never reside with their spouse; however, similarly situated homosexual inmates cannot register as domestic partners." (*Knight v. Superior Court, supra*, 128 Cal.App.4th 14, 30.)[12]

---

[12] "In addition, the mechanisms for forming and terminating the relationships are different. Domestic partners simply file with the Secretary of State a Declaration of Domestic Partnership to form their legal union (§ 298.5); but couples who want to marry must obtain a license and participate in some form of ceremony solemnizing their marriage. (§§ 300, 420.) Another difference is the method for terminating a domestic partnership. If there are no children of the

In the enactment of the Domestic Partner Act the Legislature took care to include many new rights within its coverage, and at the same time provided for exclusions. In interpreting the law we must assume the Legislature was aware of the existing putative spouse doctrine, and if inclined to do so could have either expressly added to the Domestic Partner Act the rights granted to putative spouses, or amended section 2251 to include within its reach putative domestic partners. (See *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1318 [104 Cal.Rptr.2d 173]; *In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1153 [98 Cal.Rptr.2d 775]; *Massa v. Southern Cal. Rapid Transit Dist.* (1996) 43 Cal.App.4th 1217, 1221 [51 Cal.Rptr.2d 164].) We also observe that given the different and less stringent requirements for formation of a domestic partnership, the Legislature may not have wanted to create a putative domestic partnership status to grant parties dissolution rights despite the invalidity of the relationship due to a legal infirmity. We acknowledge the objective of the most recent domestic partnership legislation to expand the rights of domestic partners, but we cannot engraft onto the statutory scheme putative spouse provisions that the Legislature did not see fit to include. We must leave to the Legislature the task of affording standing to putative domestic partners to proceed with dissolution actions. Since the Domestic Partner Act has not done so, we find that appellant cannot proceed under a putative domestic partner theory. We therefore conclude that the trial court did not err by granting the motion to strike appellant's dissolution petition under Code of Civil Procedure section 436, subdivision (b). (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1437 [39 Cal.Rptr.2d 791]; *Lodi v. Lodi, supra,* 173 Cal.App.3d 628, 631.)

III. *Appellant's Right to Proceed with a Dissolution Petition Under Alternative Theories.*

We finally resolve appellant's argument that she is entitled to proceed under alternative theories or in "some other forum." Appellant asserts that she is entitled to "amend her action to plead specific performance of her vested contract rights" to dissolve her domestic partnership with respondent "in Family Court," or to consolidate her dissolution petition with a "civil matter."

The rules governing the right to amend a defective pleading are settled. "Where the defect raised by a motion to strike or by demurrer is reasonably capable of cure, 'leave to amend is routinely and liberally granted to give the plaintiff a chance to cure the defect in question.' [Citations.] A pleading may

---

union, if the partnership is not more than five years in duration, and if the partners meet certain conditions relating to property and debts, they may terminate the relationship simply by filing with the Secretary of State a Notice of Termination of Domestic Partnership (§ 299.) The dissolution of a marriage under similar circumstances requires judicial intervention. (§§ 2400–2403.)" (*Knight v. Superior Court, supra,* 128 Cal.App.4th 14, 30–31.)

be stricken only upon terms the court deems proper [citation], that is, terms that are just. [Citations.] It is generally an abuse of discretion to deny leave to amend, because the drastic step of denial of the opportunity to correct the curable defect effectively terminates the pleader's action." (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146–1147 [16 Cal.Rptr.3d 555].) Moreover, "A showing that the complaint can be amended to state a cause of action 'need not be made in the trial court so long as it is made to the reviewing court.' If there is a reasonable possibility that a plaintiff can amend [her] complaint to cure the defects, leave to amend must be granted." (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1041–1042 [134 Cal.Rptr.2d 260].) Still, "on appeal the plaintiff does bear the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.] ' ". . . Plaintiff must show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading. . . ." [Citation.]' [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7–8 [86 Cal.Rptr.2d 73].)

Here, appellant has failed to establish a reasonable possibility that she is capable of amending her pleading to properly state a cause of action in a dissolution proceeding. We have found appellant's efforts to bring herself within the Domestic Partner Act unavailing, so she is left with her stated claims of "contract rights," equitable estoppel, "detrimental reliance" upon respondent's promises of continued health care coverage and support, and the intent of the parties to be treated "as if married." All of these claims may be cognizable in a civil action, but they are not family law matters that may be adjudicated as part of a dissolution petition.

In *Marvin v. Marvin* (1976) 18 Cal.3d 660, 681 [134 Cal.Rptr. 815, 557 P.2d 106] (*Marvin*), the California Supreme Court "determined that the Family Law Act was not intended by the Legislature to delineate the property rights of nonmarital partners. However, the court also determined (a) that the courts should enforce contracts between nonmarital partners and (b) that in the absence of an express contract, the courts should look to the conduct of the parties to determine whether or not that conduct demonstrates 'an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties.' [Citation.] [¶] The *Marvin* court also held that, in the absence of an express agreement, the courts may look to a variety of remedies to protect the parties' expectations. Among those remedies, the court suggested that principles of constructive trust, resulting trust or quantum meruit might be employed by the courts. [Citation.] In footnote 25, the court noted that the remedies suggested were not exclusive and that 'additional equitable remedies [may evolve] to protect the expectations of the parties to a nonmarital relationship in cases in which existing remedies prove inadequate . . . in light of the factual setting in which they arise.' [Citation.]"

(*Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 883 [24 Cal.Rptr.2d 892].) Support agreements between cohabitants have also been found "enforceable under the *Marvin* case." (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1063 [60 Cal.Rptr.2d 908].)

■ But "[p]roperty rights, if any, under a '*Marvin* agreement' derive from an express or implied contract or equitable principles." (*Kroopf v. Guffey* (1986) 183 Cal.App.3d 1351, 1357–1358 [228 Cal.Rptr. 807].) "Whatever else they may be, *Marvin* causes of action are civil actions. The Supreme Court plainly defined such actions as civil actions based on contract theory. The court explicitly said such actions are not family law matters: 'The provisions of the Family Law Act do not govern the distribution of property acquired during a nonmarital relationship . . . .' [Citation.] The opinion further says there is no evidence that the Family Law Act was ever intended to regulate property rights of nonmarital partners, and the rights of such partners, if any, derive from express or implied contract or equitable principles. [Citation.] Accordingly, the court said it did not extend such plaintiffs the same rights as the Family Law Act grants valid or putative spouses; rather, their status is that of plaintiffs in contract actions." (*Schafer v. Superior Court* (1986) 180 Cal.App.3d 305, 309 [225 Cal.Rptr. 513].) A *Marvin* action is to be "heard according to the procedural rules applicable to civil litigants generally and not according to family law rules and procedures." (*Friedman v. Friedman, supra,* 20 Cal.App.4th 876, 888; see also *Byrne v. Laura, supra,* 52 Cal.App.4th 1054, 1063; *Beaty v. Truck Ins. Exchange* (1992) 6 Cal.App.4th 1455, 1465–1466 [8 Cal.Rptr.2d 593].) "*Marvin* does hold, and is best known for its holding that the mere fact of nonmarital cohabitation does not destroy the parties' rights to recover from one another in accordance with their legitimate contractual rights and expectations. However, even as the nonmarital cohabitation does not erode the parties' contract rights, neither does such cohabitation confer on them any special privilege over and above those of any other civil litigants." (*Schafer v. Superior Court, supra,* at pp. 309–310, fn. omitted.)

While appellant is not foreclosed from proceeding with a civil action against respondent, she cannot amend her dissolution petition to proceed in family law court with her claims based upon contractual rights, promises and expectations. Thus, amendment could not have cured the defective pleading, and the court did not err in dismissing the action. (*Carroll v. Import Motors, Inc., supra,* 33 Cal.App.4th 1429, 1437; *Lodi v. Lodi, supra,* 173 Cal.App.3d 628, 631.)

## DISPOSITION

Accordingly, the judgment is affirmed. Costs on appeal are awarded to respondent.

Stein, Acting P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 29, 2006, S147593.