Filed 7/21/16  Kagan v. Victor Valley Community College Dist. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARSHALL KAGAN et al., | |
| Plaintiffs and Appellants, | E065165 |
| v. | (Super.Ct.No. CIVDS1501060) |
| VICTOR VALLEY COMMUNITY COLLEGE DISTRICT et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed.

Marshall J. Kagan, in pro. per., and Larry E. Hoover, in pro. per., for Plaintiffs and Appellants.

Parker & Covert and Jonathan J. Mott for Defendants and Respondents.

I

INTRODUCTION

This appeal involves a dispute about college bond proceeds.  Plaintiffs Marshall J.

1

Kagan and Larry E. Hoover brought an action against the Victor Valley Community College District (the college district) and three individuals.[1] The trial court denied plaintiffs' petition for writ of mandate.

On appeal, plaintiffs contend the trial court erred in ruling plaintiffs failed to establish that bond proceeds were used for an illegal purpose; abused its discretion by not allowing oral testimony; erred in its finding that plaintiffs did not submit new facts or law at the motion for reconsideration; and erred in citing plaintiffs for contempt and awarding $750 attorney's fees as costs to defendants. We reject these contentions and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are members of a citizen's oversight committee, charged with reviewing bond expenditures. Acting in propria persona, plaintiffs filed a second amended petition in August 2015. In their petition, they allege the college district has violated the California Constitution by spending $53 million in bond proceeds on payroll and operating expenses instead of capital improvements, particularly for the construction of new classrooms.[2] Plaintiffs further allege the college district has a deficit budget of $4

---

[1] Roger Wagner, the current college president, Peter Allan, a former college president, and G.H. Javaheripour, a college official.

[2] California Constitution, Article 13A, Section 1, subdivision (b)(3), requires that bonded indebtedness be used for "the construction, reconstruction, rehabilitation, or replacement of school facilities, including the furnishing and equipping of school facilities, or the acquisition or lease of real property for school facilities, . . ."

2

million caused by faculty union contracts and resulting in the college being on probation for accreditation. The first cause of action asserts that millions of bond dollars were transferred to the general fund instead of being used for capital improvements. The second cause of action alleges the three individual defendants are liable for misuse of the bond money. Plaintiffs sought declaratory relief and an injunction. Plaintiffs did not submit any legal argument or evidence supporting their claims.

In response, defendants filed an answer, opposing points and authorities, declarations, and exhibits, and evidentiary objections. Defendants' submissions trace an accounting of college district funds, beginning in 1994, to show that no construction funds were used improperly.

*The 1994 COPs*

Wagner's declaration explains that, in 1994, the college district issued certificates of participation (COPs) as a fundraising measure for campus construction projects. The COPs are a form of borrowing by a public entity, secured by anticipated revenues. The uses for the 1994 COPs were itemized in a private placement memorandum issued for the 1994 Capital Improvement Financing Project: "The Project comprises the acquisition and construction of certain facilities or improvements to existing facilities on the campus of Victor Valley Community College, . . ." When COPs are issued, a trust agreement is created to hold the funds pending their use for the stated purposes. A trustee is appointed in accordance with the trust agreement.

According to the declaration of Michael Ogburn, a financial adviser, a net amount of $23,712,808.12 was raised from the 1994 COPs, designated as the "Acquisition and

3

Construction Fund" for the 1994 Project. The trustee then invested the Acquisition and Construction Fund in a guaranteed investment contract referred to as Funding Agreement No. 4464 with Sun Life Insurance Company (Sun Life GIC 4464). Sun Life GIC 4464 was a permitted investment under the 1994 Trust Agreement and Government Code section 53601, subdivision (m). In that way, the Acquisition and Construction Fund would generate interest while the 1994 Project was underway, as funds were gradually withdrawn to pay for the 1994 Project. Sun Life GIC 4464 is not at issue in this case.

*The Guaranteed Investment Contract*

The college district was able to obtain state school construction funds from the state to reimburse its construction expenses on the 1994 Project. The state reimbursement was deposited in the general fund.

In accordance with the trust agreement, the college district entered into another guaranteed investment contract, referred to as Funding Agreement No. 4463, with Anchor National Life Insurance Company (Anchor GIC). The Anchor GIC was also a permitted investment under the 1994 Trust Agreement and Government Code section 53601, subdivision (m). The source of funds for the Anchor GIC could be any funds of the college district.

Once the college district certified that it would use the COP proceeds to complete the 1994 Project, the district was able to invest an amount equal to the amount of the Acquisition and Construction Fund, with accrued interest, into the Anchor GIC from its general fund. No funds from the 1994 COPs were used to fund the Anchor GIC, as those funds went into the Sun Life GIC 4464 and were expended for construction on the 1994

4

Project.

Since the college district obtained state reimbursement for the cost of the 1994 Project, the district was able to take an equal amount from its general fund and invest that in the Anchor GIC. Dr. Javaheripour's memo to the Board of Trustees, dated May 16, 2011, summarizes the amounts placed in the Anchor GIC in 1994-97 and reiterates that they were "'from the reimbursement of the 1994 COP issuance into a Guaranteed Investment Contract (GIC) at 7.75% rate.'" The 1994 COPs would be repaid later from the 1997 COPs.

*The 1996 COPs*

The college district planned a 1996 Capital Improvements Financing Project (the 1996 Project), to refund 1993 COPs and provide more construction funds for "the remodeling of certain existing facilities into general purpose classrooms. The 1993 Project is expected to be completed in January 1998 and the 1996 Project is expected to be completed by March 1998."

*The 1997 COPs and Measure JJ* (*2008 General Obligation Bonds*)

In 1997 the District issued its 1997 COPs, which were used to refund both the 1994 and 1996 COPs, which were still outstanding at that time. The 1997 COPs were refunded in 2009 from Measure JJ, a general obligation bond measure passed in 2008. The authorized purposes of the bond measure included: "Retire past funding utilized for campus improvements, making more funding available for instruction and other academic programs."

The 1997 COPs, which had refunded the 1994 and 1996 COPs, were in turn

5

refunded by a portion of the proceeds of an issuance of general obligation bonds in 2009. Since retirement of existing debt used for capital improvements (the COPs) was an authorized purpose of the 2008 bond measure, the college district was able to use some of the general obligation bond proceeds for that purpose.

The Anchor GIC is still in effect and provides interest revenue to the college district each year. The Anchor GIC, dating to 1994, was funded, as described above, from state reimbursements that became general fund revenues, not from the 1994 COPs proceeds, which were used as intended for construction. The 1994 COPs and 1996 COPs were refunded by the 1997 COPs which were in turn refunded by proceeds of the 2009 general obligation bond sale.

*The Trial Court's Ruling*

At the hearing on September 18, 2015, the court explained to plaintiffs that they could not testify because it was not an evidentiary hearing. Instead, the court heard argument from both sides and took the matter under submission. The court issued its detailed written ruling, denying the petition for writ of mandate. The court held, "[p]etitioners have failed to cite specific facts and reasons for a belief that some illegal expenditures or injury to the public is occurring or will occur. Instead Petitioners have made general allegations claiming the bond proceeds are being used for payroll and operating expenses. Petitioners have failed to establish the bond proceeds are being used for an illegal purpose."

Plaintiffs filed a motion for reconsideration, including points and authorities and declarations. Defendants filed opposition and evidentiary objections. After plaintiffs did

6

not appear for the hearing on the reconsideration motion, the court denied the motion and set a sanctions and/or contempt hearing against plaintiffs for violation of Code of Civil Procedure section 1008, subdivision (a), for failure to allege new or different facts or law.

Plaintiffs filed a response and defendants requested an award of attorney's fees of $4,960. The court issued its ruling awarding $750 in costs to defendants.

III

DISCUSSION

*A.  Standard of Review*

A judgment or order of the lower court is presumed correct. All intendments and prescriptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Where findings were waived, it is implied in favor of the judgment that the court found all the facts necessary to support it. (*Stewart v. Langer* (1935) 9 Cal.App.2d 60, 61.) The trial court's resolution of disputed factual issues must be affirmed so long as supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

For a writ of mandate to issue under Code of Civil Procedure section 1085, two basic requirements are essential, namely, a clear, present and usually ministerial duty on the part of respondent and a clear, present and beneficial right in plaintiff to performance of that duty. (*Fair v. Fountain Valley School District* (1979) 90 Cal.App.3d 180, 186; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) The writ will not compel the exercise of discretion on the part of a public official

7

but it is available to correct an abuse of discretion. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 101 Cal.App.4th 1317, 1325-1326; *Fair,* at p. 187.)

The petitioner bears the burden of pleading and proving the facts on which the claim for relief is based. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153-1154.) Pursuant to Education Code section 15284, subdivision (a)(1)-(3), plaintiffs had the burden to prove an expenditure of general obligation bond funds in violation of the California Constitution.

*B. The Trial Court's Ruling*

Plaintiffs' substantive argument is that bond proceeds were used for an illegal purpose by the college district. They maintain that Kagan's testimony about a 2003 Internal Revenue Service arbitrage agreement would have established the illegality. However, plaintiffs did not explain the significance of the proffered testimony at the time of the September hearing. Plaintiffs also failed to file a request for oral testimony at the hearing, showing good cause, and describing the proposed testimony and the estimated time required. (Cal. Rules of Court, rule 3.1306(b).) The court did not abuse its discretion in denying the request to allow Kagan's oral testimony because documentary evidence is more important than the demeanor of witnesses in this kind of case involving disputed accountings. (*Eddy v. Temkin* (1985) 167 Cal.App.3d 1115, 1121.) Plaintiffs' citation to *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354, involving hearsay evidence in family law proceedings, has no bearing on the issues here.

Furthermore, as defendants explain, the 2003 agreement reflects the settlement of a claim by the Internal Revenue Service for interest earned on the investment of residual

8

funds from the proceeds of the 1994 and 1996 COPs. The residual funds were invested in a capitalized interest account and applied to the payment of interest on the COPs. Because the residual funds were not tax-exempt, a penalty had to be paid to the Internal Revenue Service. The settlement was completed in 2003 using funds from a guaranteed investment account, and had nothing to do with the 1997 COPs which were eventually refunded by proceeds of the 2008 bond issue. Nothing about this information served to show the college district's misuse of construction funds.

B. *Motion for Reconsideration*

In an effort to cure the deficiencies of their original submission, plaintiffs filed a motion for reconsideration submitting several declarations and exhibits that had not been presented before.[3] These included a declaration of Xinyuan Ai, Kagan's daughter, about her dissatisfaction with classroom space; a declaration of Carl Tate about union disputes when he was serving on the Board of Trustees between 1987 and 1999; and Kagan's own declaration.

Apparently, plaintiffs do not understand that a motion for reconsideration is not a second chance for a do-over. Instead, a motion for reconsideration must be based on evidence "that the moving party could not, with reasonable diligence, have discovered or produced . . . at the trial." (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212-213.) Reconsideration cannot be granted based on claims the court misinterpreted the law in its initial ruling. There must be both new facts or circumstances

---

[3] Some of the exhibits were copies of defendants' exhibits and had already been considered by the trial court.

9

and some valid reason for not offering it earlier. (*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500; Code Civ. Proc., § 1008.) A motion for reconsideration is properly denied where based on evidence that could have been presented in connection with the original motion. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1460; *Hennigan v. White* (2011) 199 Cal.App.4th 395, 406.)

None of the material submitted by plaintiffs met the requirements for reconsideration. There is no explanation about what new or different facts, circumstances or law existed and could not, with reasonable diligence, have been presented at the hearing on September 18, 2015. Plaintiffs offered no valid reason for not providing their declarations and exhibits earlier at the original hearing. Therefore, the court did not abuse its discretion in denying the motion for reconsideration. (*Gilberd v. AC Transit, supra*, 32 Cal.App.4th at p. 1500.)

*C. Contempt and Sanctions*

If a motion for reconsideration is found to lack evidentiary support or legal merit, sanctions may be imposed against the moving party under Code of Civil Procedure section 128.7. Code of Civil Procedure section 1008, subdivision (d), provides in pertinent part: "A violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7. . . ." In addition, a motion for reconsideration justifies sanctions under Code of Civil Procedure section 128.5 if the underlying motion was frivolous in the sense that it was totally devoid of merit, lacking any basis in statutory or case law, or without any necessary evidence to support it. (*Karwasky v. Zachay* (1983) 146 Cal.App.3d 679, 681.)

Defendants did not file any supporting material for the original hearing, instead relying solely on their second amended petition.  The reconsideration motion failed to show "new or different facts, circumstances, or law."  (Code Civ. Proc., § 1008, subd. (a).)  Plaintiffs offered nothing in their motion for reconsideration that they could not have submitted at the time of the hearing.

The court awarded defendants only $750 as costs, less than 15 percent of the fee request submitted.  The court's order is documented at page 19 of the register of actions.  The court did not abuse its discretion in awarding minimal attorney's fees as costs for responding to the meritless motion for reconsideration.  (*On v. Cow Hollow Properties* (1990) 222 Cal.App.3d 1568, 1576-1578.)

## IV

## DISPOSITION

We affirm the judgment.  In the interests of justice, the parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

HOLLENHORST
         Acting P. J.

McKINSTER
         J.

11