Filed 9/9/24  McDowell v. Wedgewood, LLC CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| KEVIN R. MCDOWELL et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>WEDGEWOOD, LLC, et al.,<br><br>    Defendants and Respondents. | B330350<br><br>(Los Angeles County Super. Ct. No. 23STCV02140) |


APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael L. Stern, Judge.  Reversed and remanded with instructions.

Kevin R. McDowell, self-represented litigant, for Plaintiffs and Appellants.

Meghan E. Turner, for Defendants and Respondents.

# I. INTRODUCTION

Plaintiff Kevin McDowell, as successor trustee of the Mattie B. Evans Family Trust, dated June 7, 2016, and individually, appeals from the trial court's order sustaining without leave to amend a demurrer to the first amended complaint against defendants.[1] We conclude that the court erred in sustaining the demurrer to the conversion cause of action, but that it did not abuse its discretion by denying plaintiff leave to amend the complaint. We therefore reverse the judgment with instructions to enter a new order overruling the demurrer to the conversion cause of action.

# II. FACTUAL BACKGROUND[2]

## A. *Properties*

Plaintiff's mother, Mattie Evans, owned two properties in the City of Los Angeles, one located on Don Porfirio Place (the Porfirio property) and the other located on Don Lorenzo Drive (the Lorenzo property). In 2016, she transferred those properties

---

[1] Defendants are Wedgewood LLC (Wedgewood), Breckenridge Property Fund 2016, LLC (Breckenridge), and Redwood Holding, LLC (Redwood).

[2] We state the facts in a manner consistent with the standard governing our review, accepting as true all well-pleaded material allegations, but not contentions, deductions or conclusions of fact or law, and we also consider matters which may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

by quit claim deed into the "Mattie B. Evans Family Trust, dated June 7, 2016" (living trust). The living trust instrument named plaintiff as successor trustee.[3]

B. *Trustee Sales*

In September 2020, the trustee on a deed of trust executed by Evans encumbering the Porfirio property conducted a trustee sale at which Redwood acquired title to the property. In November 2020, the trustee on a deed of trust executed by Evans encumbering the Lorenzo property conducted a trustee sale at which Breckenridge acquired title to that property.

Evans passed away on December 30, 2020.

C. *Unlawful Detainer Actions/Writs of Possession*

On January 5, 2021, in an unlawful detainer action that it filed against Evans, as trustor of the living trust, Breckenridge obtained a default judgment concerning the right to possession of the Lorenzo property. That same day, Breckenridge obtained a writ entitling it to possession of Lorenzo. On February 10, 2021, the Los Angeles County Sheriff's Department served a copy of the writ and posted it at the Lorenzo property.

---

[3]    The trust instrument attached to the first amended complaint appears to be incomplete. Specifically, the table of contents, under "Distributions to Beneficiaries," shows shares of trust proceeds being divided among plaintiff, three siblings, and the issue of two deceased siblings as beneficiaries. But the pages of the trust instrument referred to in the table are missing from the attached document.

On January 15, 2021, in an unlawful detainer action that it filed against Evans, as trustor of the living trust, Redwood obtained a default judgment concerning the right to possession of the Porfirio property. On February 8, 2021, Redwood obtained a writ of possession for Porfirio. On February 17, 2021, the Sheriff's Department served a copy of the writ and posted it at the Porfirio property.

The writs for both properties provided notice that any personal property remaining on the premises would be sold or otherwise disposed of in accordance with Code of Civil Procedure section 1174 (section 1174) unless the owner paid "the judgment creditor the reasonable cost of storage" and took possession of the personal property not later than 15 days after the time the judgment creditor took possession of the premises.

D.    *Storage and Sale of Personal Property*

Upon receiving the notice, plaintiff, who was then residing at the Lorenzo property, moved what belongings he could to the Porfirio property, leaving behind furnishings worth $18,000 and other property including a refrigerator, a television, and a sound system. Plaintiff then spoke with Wedgewood's attorney who, in turn, put him in touch with Breckenridge representative Olivia Reyes. Reyes advised plaintiff that he would have 15 days to call her and schedule a time to pick up his belongings.

Because he was unable to get someone to help him move his belongings, plaintiff left his personal belongings at both properties. He did so believing that his belongings would not be disposed of without his knowledge and that, if they were auctioned, there would be a surplus of sales proceeds after

4

deducting the auction costs. Plaintiff estimated that he left approximately $84,000 worth of furniture and other belongings at the Porfirio property.

In June or July 2021, plaintiff attempted to ascertain the status of the personal property that he had left at the Porfirio property. His attorney contacted the attorney for the trustee who had conducted the sale of the Porfirio property and was assured that the property would not be sold.

In October 2021, plaintiff contacted Sam Chandra, the attorney who represented Redwood and Breckenridge in the unlawful detainer proceedings, who referred him to Wedgewood representative Reyes. Reyes told plaintiff that Wedgewood was responsible for the disposition of his personal property, the property had been auctioned, he would need to contact the auction company regarding any surplus, and he should not call her again. Plaintiff tried calling the auction company, but was unable to speak with anyone. He then spoke to Chandra who advised that he was not representing defendants regarding the disposition of plaintiff's personal property and that they had a different attorney handling that matter.

In response to demand letters that plaintiff sent to defendants, he received an April 22, 2022, cover letter from attorney Chandra enclosing a letter to plaintiff from Redwood detailing the disposition of the property left at Porfirio and confirming that no auction had been conducted as to Lorenzo. The enclosed letter set forth an accounting of the property left at Porfirio. It indicated that the storage of plaintiff's property began on February 26, 2021—the day following the "Sheriff's Lockout"— and ended on April 8, 2021—the date plaintiff's property was auctioned. The accounting included an amount for 41 days of

5

storage, $9,566.53, and indicated that the amount remitted from the auction, after deduction of fees and expenses, was $2,811.20. The accounting showed that, due to the storage costs, there was a negative balance due of $6,755.33, which did not include the additional sum of $32,666.20 in holdover damages.

## III.  PROCEDURAL BACKGROUND

### A.  *First Amended Complaint*

On February 15, 2023, plaintiff, individually and in his capacity as the successor trustee of the living trust, filed a verified first amended complaint against defendants asserting three causes of action for (1) "[w]illful [n]egligence and [f]raud" in violation of Civil Code section 1983, subdivisions (a) through (c); (2) embezzlement in violation of Civil Code section 1988 and Penal Code section 484; and (3) "[c]onversion and [u]njust [e]nrichment"[4] in violation of Civil Code section 1983.  The complaint attached 17 exhibits, including a portion of the living trust instrument.

---

[4]     Unjust enrichment is not a cause of action; it is a claim for restitution.  (*De Havilland v. FX Networks, LLC* (2018) 21 Cal.App.5th 845, 870.)  Accordingly, we will refer to this cause of action as one for conversion only.

The complaint also asserted, as a fourth cause of action, a request for punitive damages.

6

B.    *Demurrer*

On March 21, 2023, defendants filed a demurrer to the first amended complaint, arguing that plaintiffs had failed to allege facts sufficient to state any of the three claims for relief.  They argued that the disposition of personal property left at a premises after a judgment debtor is placed in possession under a writ of possession is governed by section 1174, which requires a notice in conformance with Civil Code section 1983.[5]  Because the notice posted at the two properties by the Sheriff's Department conformed with the requirements of section 1174 and Civil Code section 1983, defendants maintained that plaintiff was not entitled to any further or separate notice.

As to the negligence and fraud claim, defendants argued that their compliance with section 1174 demonstrated that they did not breach any duty of care to plaintiff.  On the embezzlement claim, defendants asserted that they did not violate Civil Code section 1988—which requires the balance of the sales proceeds after auction to be deposited with the county treasurer—because their documentation showed there was no balance to deposit and that there is no private right of action under Penal Code section 484.  And, as to the conversion claim, defendants argued that, to the extent it was based on their failure to auction the property left at the Lorenzo property, plaintiff failed to allege that it was worth more than $700 as required under Civil Code section 1988.

Finally, defendants contended that leave to amend should be denied because the documents attached to the complaint

---

[5]    Civil Code section 1983, subdivision (a) requires notice to "the tenant and to any other person the landlord reasonably believes to be the owner of the property."

7

demonstrated that they had complied with the law governing the disposition of plaintiff's property, such that there was no reasonable probability that plaintiff could truthfully amend to cure the deficiencies.

On April 10, 2023, plaintiff, in propria persona, filed an opposition to the demurrer. He conceded on the demurrer to his first cause of action for negligence and fraud, but opposed the demurrer to the second cause of action for embezzlement and third cause of action for conversion. According to plaintiff, defendants "clearly converted" his personal property in violation of Civil Code section 1988 because that property was worth more than $700 and defendants therefore had an obligation to store and auction the property and remit any balance after storage costs and auction expenses.

On behalf of the living trust, plaintiff also requested leave to amend to state a claim for an accounting.

Defendants filed a reply.

C.    *Ruling*

At the April 24, 2023, hearing, which was not transcribed by a court reporter, the trial court heard argument and took the matter under submission. That same day, the court issued a minute order sustaining the demurrer without leave to amend. The court noted that plaintiff could not represent the living trust in propria persona unless he was the sole settlor and beneficiary. The court further noted that the trust documents showed there were other sibling beneficiaries, a fact plaintiff acknowledged at the hearing. Although plaintiff claimed at the hearing that his siblings were no longer interested in "serving as trustees," the

8

court found that he did not show by probate order or written documents that "these co-trustees [had] abandoned their trustee duties or ceded such responsibilities to [plaintiff]." The court therefore sustained the demurrer to all the living trust's claims without leave to amend.

As to plaintiff's individual claims, the trial court concluded that because plaintiff was not entitled to a separate notice under Civil Code section 1983, the demurrer must be sustained without leave to amend. In the alternative, the court concluded that plaintiff's "allegations of the [f]irst [a]mended [c]omplaint ha[d] no factual nexus with any of the causes of action" and therefore sustained the demurrer to all claims without leave to amend on that basis as well.

## IV.    DISCUSSION

### A.    *Demurrer Standards*

We review a trial court's sustaining of a demurrer de novo. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Ibid.*)

If we conclude that the complaint does not state a cause of action, "we must decide whether there is a reasonable possibility

the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Ordinarily, "leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.) "If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend." (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

B.    *Analysis*

1.    Living Trust's Claims

The trial court correctly sustained the demurrer to the complaint as to the living trust's claims. The documents attached to the complaint indicated that plaintiff, who was appearing in propria persona, was not the sole beneficiary of the trust. And, plaintiff did not provide the court with any documentation showing that one or more of the beneficiaries had relinquished their rights to a share of the trust proceeds. Therefore, plaintiff could not represent the interests of the trust. (See *Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1519 ["[I]n actions involving the trust corpus, a trustee generally may not appear in propria persona "'because in this capacity [he or she] would be representing *interests of others* and would therefore be engaged in

10

the unauthorized practice of law.  [Citation.]'"  [Citation.]  But if a sole trustee is also the trust's sole settlor and beneficiary, the rationale of these cases ceases to apply:  no interests are at stake except those of one person"].)

    2.    Individual Claims

    We also conclude that the trial court correctly sustained the demurrer to plaintiff's negligence and fraud claims.  Plaintiff conceded below that he failed to state a negligence or fraud claim.  Indeed, plaintiff did not allege either that defendants owed him a duty of care or that they induced him to leave the property at both locations by falsely assuring him that it would not be disposed of without his knowledge and consent.

    As to the embezzlement claim, there is no private right of action under Penal Code section 484, and plaintiff failed to adequately allege a tort claim cognizable at common law based on the elements of criminal embezzlement.  (See *Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1347 ["'Embezzlement requires conversion of trusted funds [or property] coupled with the intent to defraud'"].)

    But, as to the conversion claim, to the extent it was based on defendants' failure to auction the personal property left at the Lorenzo property as required under Civil Code section 1988, plaintiff alleged that the property he left behind was worth more than $700.[6]  Specifically, he alleged that he had moved what

---

[6]    At oral argument, defendants asserted for the first time that Civil Code section 1988 did not apply to their disposition of the property left behind at Lorenzo because plaintiff did not adequately allege that he was a tenant at that premises.  We do

11

property he could from Lorenzo to the Porfirio property and alleged the value of the property that he left behind at Lorenzo was in excess of $18,000. And, defendants' letter explaining the disposition of the property left at Lorenzo admitted that it was not sold at a public auction. Therefore, plaintiff sufficiently alleged a violation of Civil Code section 1988[7] and, therefore, a claim for conversion because defendants allegedly disposed of his personal property left at Lorenzo in a manner that was inconsistent with his rights under section 1988. (*Fremont*

---

not reach arguments raised for the first time at oral argument. (*McMillin Homes Construction, Inc. v. National Fire & Marine Ins. Co.* (2019) 35 Cal.App.5th 1042, 1056, fn. 7.) But even if we were to reach the new argument, we would reject it as based on a faulty premise. As explained below, the requirements of Civil Code section 1988 are not limited to the personal property of the tenant at the premises; they apply to anyone the landlord reasonably believes to be the owner of the property.

[7]     As noted, the notice provisions of Civil Code section 1983 apply where personal property remains at the premises after a tenancy is terminated and the premises is vacated by the tenant. In such circumstances, notice of intent to sell must be given, not only to the tenant, but also to *any person* the landlord reasonably believes to be the owner of the personal property.

Section 1988 provides that, after such persons are notified of the landlord's intent to sell it at auction, the property "shall be sold at public sale by competitive bidding," unless its value is less than $700, in which case the landlord "may retain the property for his or her own use or dispose of it in any manner." Subdivision (c) requires that, "[a]fter deduction of the costs of storage, advertising, and sale, any balance of the proceeds of the sale which is not claimed by the former tenant or *an owner other than such tenant* shall be paid into the treasury of the county . . . ." (Italics added.)

12

*Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 (*Fremont*) ["Conversion is generally described as the wrongful exercise of dominion over the personal property of another. [Citation.] The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. [Citation.]"].)

### 3. Leave to Amend

"'A showing that the complaint can be amended to state a cause of action "need not be made in the trial court so long as it is made to the reviewing court." If there is a reasonable possibility that a plaintiff can amend [her] complaint to cure the defects, leave to amend must be granted.' [Citation.] Still, 'on appeal the plaintiff does bear the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.] "... Plaintiff must show in what manner [she] can amend [her] complaint and how that amendment will change the legal effect of [her] pleading. ...' [Citation.]" [Citation.]' [Citation.]" (*Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1175.)

Plaintiff argues that he should be allowed, on behalf of the living trust, an opportunity to retain a lawyer to represent the trust and, presumably, that lawyer should then be given leave to amend the trust's claims against defendants. We disagree.

Because we have held that plaintiff, acting in propria persona, cannot represent the living trust, we conclude that he cannot request, on behalf of the living trust, leave to amend. We express no opinion on whether plaintiff, if later represented by

counsel, could then move, as successor trustee of the living trust, to reassert claims on its behalf.

As to whether plaintiff, in his individual capacity, could amend the complaint to state one or more other viable claims, plaintiff argues only that he should have been granted leave to amend his complaint as to the conversion claim. Because we have concluded that the trial court erred in sustaining the demurrer to the conversion claim as stated, his argument is moot.

# V.    DISPOSITION

The judgment is reversed with directions to enter a new order (1) granting the demurrer to as to each of the living trust's causes of action without leave to amend; (2) granting the demurrer to plaintiff's first and second individual causes of action without leave to amend; and (3) overruling the demurrer as to plaintiff's third individual cause of action for conversion. Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



BAKER, Acting P. J.



MOOR, J.

15